M. Anderson Berry (SBN 262879)
aberry@justice4you.com
Gregory Haroutunian (SBN 330263)
gharoutunian@justice4you.com
Brandon P. Jack (SBN 325584)
bjack@justice4you.com
**CLAYEO C. ARNOLD**
**A PROFESSIONAL CORPORATION**
12100 Wilshire Blvd Suite 800
Los Angeles, CA 90025
Telephone: (747) 777-7748
Fax: (916) 924-1829

William B. Federman*
wbf@federmanlaw.com
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Telephone: (405) 235-1560
Facsimile: (405) 239-2112

*Pro Hac Vice*

*Counsel for Proposed Lead Plaintiff/Movant*
*Christian Chiarelli and CJC Prime Investments, LLC*

[Caption on next page]

i

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Jennifer Maloney**, Individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>**MULLEN AUTOMOTIVE, INC. F/K/A NET ELEMENT, INC., DAVID MICHERY** and, **JONATHAN NEW**<br><br>*Defendants.* | Case No.: 2:25-cv-01187<br><br>**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF CHRISTIAN CHIARELLI AND CJC PRIME INVESTMENTS LLC TO APPOINT LEAD PLAINTIFFS AND APPROVE SELECTION OF LEAD COUNSEL**<br><br>**CLASS ACTION**<br><br>Judge: Honorable Marc C. Scarsi<br>Hearing Date: May 12, 2025<br>Time: 9:00 A.M.<br>Courtroom: 7C |

# TABLE OF CONTENTS

I.      PROCEDURAL HISTORY.......................................................................1

II.     PRELIMINARY STATEMENT............................................................3

III.    PERTINENT BACKGROUND.............................................................4

IV.     ARGUMENT ........................................................................................7

  A.    THE CLASS PERIOD...................................................................7

  B.    MOVANTS SHOULD BE APPOINTED LEAD PLAINTIFFS...............9

    1.  Movants Filed a Timely Motion................................................11

    2.  Movants Have the Largest Financial Interest in the Relief Sought By the Class ........................................................................................12

    3.  Movants Satisfy the Requirements of Federal Rule of Civil Procedure 23 14

      a)  Movants' Claims are Typical..................................................15

      b)  Movants Are an Adequate Representatives ...........................16

  C.    The Court Should Approve Lead Plaintiffs' Choice of Counsel..............18

V.      CONCLUSION..................................................................................19

MEMORANDUM OF LAW IN SUPPORT OF MOTION OF CHRISTIAN CHIARELLI AND CJC PRIME INVESTMENTS, LLC TO APPOINT LEAD PLAINTIFFS AND APPROVE SELECTION OF LEAD COUNSEL – 2:25-CV-01187

# TABLE OF AUTHORITIES

## Cases

*Bodri v. GoPro, Inc.*,

No. 16-cv-00232-JST, 2016 WL 1718217 (N.D. Cal. Apr. 28, 2016)..................7

*Deering v. Galena Biopharma, Inc.*,

No. 3:14-cv-00367-SI, 2014 WL 4954398 (D. Or. Oct. 3, 2014).........................7

*Hanlon v. Chrysler Corp.*,

150 F.3d 1011 (9th Cir. 1998).........................................................................16

*In re BP, PLC Sec. Litig.*,

758 F. Supp. 2d 428 (S.D. Tex. 2010) ...............................................................7

*In re Cavanaugh*,

306 F.3d 726 (9th Cir. 2002)......................................................................*passim*

*In re Cendant Corp. Litig.*,

264 F.3d 201 (3d Cir. 2001) .....................................................................12, 15

*In re CMS Energy Securities Litigation*,

236 F.R.D. 338 (E.D. Mich. 2006)...................................................................9

*In re Gemstar-TV Guide Int'l. Sec. Litig.*,

209 F.R.D. 447 (C.D. Cal. 2002) ....................................................................12

*In re Network Ass'c, Inc., Securities Litig.*,

76 F. Supp. 2d 1017 (N.D. Cal. 1999). .........................................................10

MEMORANDUM OF LAW IN SUPPORT OF MOTION OF CHRISTIAN CHIARELLI AND CJC PRIME INVESTMENTS, LLC TO APPOINT LEAD PLAINTIFFS AND APPROVE SELECTION OF LEAD COUNSEL – 2:25-CV-01187

*In re Northern Dist. of Cal., Dalkon Shield IUD Prod. Liab. Litig.*,

   693 F.2d 847 (9th Cir. 1982)................................................................17

*In re Olsten Corp. Sec. Litig.*,

   3 F. Supp. 2d 286 (E.D.N.Y. 1998)......................................................13

*Knox v. Yingli Green Energy Holding Co. Ltd.*,

   136 F. Supp. 3d 1159 (C.D. Cal. 2015)................................................13

*Lax v. First Merchs. Acceptance Corp.*,

   No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997) ..............13

*Osher v. Guess? Inc.*,

   No. 01-cv-00871, 2001 WL 861694 (C.D. Cal. Apr. 26, 2001) .............15, 16, 18

*Richardson v. TVIA, Inc.*,

   No. 06-cv-06304 RMW,

   2007 WL 1129344 (N.D. Cal. Apr. 16, 2007) ......................................12, 13, 15

*Takeda v. Turbodyne Techs., Inc.*,

   67 F. Supp. 2d 1129 (C.D. Cal. 1999)..................................................17

*Villare v. ABIOMED, Inc.*,

   No. 19 Civ. 7319(ER), 2020 WL 3497285 (S.D.N.Y. June 29, 2020) .................7

*Waterford Twp. Police v. Mattel, Inc.*,

   No. 17-cv-04732-VAP-KSx, 2017 WL 10667732 (C.D. Cal. Sept. 29, 2017 ....10

*Yanek v. Staar Surgical Co.*,

No. 04-cv-8007, 2004 WL 5574358 (C.D. Cal. Dec. 15, 2004) ...................17, 18

*Yousefi v. Lockheed Martin Corp.*,

70 F. Supp. 2d 1061 (C.D. Cal. 1999)...............................................................17

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B) ...................................................................*passim*

**Rules**

Fed. R. Civ. P. 23(a)....................................................................14, 15, 16

**Other Authorities**

Crispus Nyaga, *MULN Stock: Mullen's Collapse from $725 Million to Near Zero*,

Apr. 15, 2024, https://invezz.com/news/2024/04/15/muln-stock-mullens-

collapse-from-725-million-to-near-zero/..........................................................5

*Mullen Automotive Inc. Announces Reverse Stock Split Effective April 11, 2025*,

MULLEN (Apr. 9, 2025) https://news.mullenusa.com/mullen-automotive-inc.-

announces-reverse-stock-split-effective-april-11-2025.......................................5

*Mullen Automotive Inc. Announces Reverse Stock Split Effective Feb. 18, 2025*,

MULLEN (Feb. 13, 2025) https://news.mullenusa.com/mullen-automotive-inc.-

announces-reverse-stock-split-effective-feb-18-2025..........................................5

*Mullen Automotive: Yet Another Fast Talking EV Hustle*, Hindenburg Research

(April 6, 2022), https://hindenburgresearch.com/mullen/ ...................................8

vi

Yahoo! Historical Data for Mullen Automotive,

https://finance.yahoo.com/quote/MULN/history/ (last visited April 11, 2025)....5

Christian Chiarelli ("Chiarelli") and CJC Prime Investments LLC, ("CJC") (collectively, "Movants") respectfully submits this memorandum of law in support of their motion for an order:

(1)    appointing Movants as Lead Plaintiffs pursuant to Section 21D of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the PSLRA; and

(2)    appointing William B. Federman of Federman & Sherwood ("Federman") as Lead Counsel for the Class (as defined below) and M. Anderson Berry of Clayeo C. Arnold, a Professional Corporation, ("Berry") as Liaison Counsel for the Class pursuant to Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(a)(3)(B), as amended by the PSLRA.

## I. PROCEDURAL HISTORY

This is a securities class action on behalf of persons and entities that acquired Mullen Automotive, Inc. f/k/a Net Element, Inc. ("Mullen" or the "Company") securities between February 3, 2023 and February 13, 2025, inclusive (the "Class Period"). Chiarelli, individually and as the owner and operator of CJC, invested in Mullen stock throughout the Class Period.

On February 12, 2025, Plaintiff Jennifer Maloney commenced the first-filed securities class action with Federman as his counsel against Mullen, Mullen's Chief Executive Officer ("CEO") David Michery ("Michery"), and Mullen's Chief

1

Financial Officer ("CFO") Jonathan New ("New"), captioned *Maloney v. Mullen Automotive, Inc.*, No. 2:25-cv-01187 (C.D. Cal.) (the "*Maloney* Action"). The *Maloney* Action asserts a class action on behalf of persons or entities who purchased or otherwise publicly traded Mullen securities between February 3, 2023 and March 13, 2025 (collectively, the "Class" and each individually a "Class Member").

On March 26, 2025, Cayden Crume, James LeGrand, and Todd Holton filed a securities suit against Mullen, Michery, New, and Mullen's previous CEO and Executive Director Oleg Frier ("Frier"), captioned *Crume v. Mullen Automotive, Inc.*, No. 2:25-cv-2620 (C.D. Cal.) (the "*Crume* Action"). The *Crume* Action asserts a class action on behalf of persons or entities who purchased or otherwise publicly traded Mullen securities between May 2022 and March 26, 2025.[1]

Although the alleged class periods are not identical, as explained below, these class periods have substantial overlap and the class period for this action should, if necessary, be amended in the consolidated complaint to fall between February 3, 2023 and February 13, 2025.

---

[1] Should the Court appoint Movants as Lead Plaintiffs in this case, Movants intend to file a motion to consolidate the *Crume* Action with the first filed *Maloney* Action, after the opportunity to meet and confer.

MEMORANDUM OF LAW IN SUPPORT OF MOTION OF CHRISTIAN CHIARELLI AND CJC PRIME INVESTMENTS LLC TO APPOINT LEAD PLAINTIFFS AND APPROVE SELECTION OF LEAD COUNSEL – 2:25-CV-01187

## II. PRELIMINARY STATEMENT

The *Maloney* Action and the *Crume* Action seek to represent the same or similar class of persons against the same or similar defendants. Both actions allege a class of persons and entities that purchased or otherwise acquired Mullen securities pursuant and/or traceable to the Company and its representatives' false and misleading statements and omissions. Each of the actions raise substantially similar allegations against Mullen, Michery, and New (collectively, the "Defendants")[2] arising from Defendants' violations of federal securities laws by issuing false and misleading statements during the Class Period.

The Private Securities Litigation Reform Act of 1995 ("PSLRA") provides that the Court shall appoint the "most adequate plaintiff"—the plaintiff most capable of adequately representing the interests of Class members—as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B). Movants, with losses of approximately $574,070.15 in connection with his purchases of Mullen securities, have the largest financial interest in the relief sought in this action to their knowledge. Declaration of William B. Federman in Support of Motion ("Federman Decl."), Ex. 1. Thus, pursuant to the PSLRA's lead plaintiff provision, Movants respectfully submits that they are presumptively the most adequate plaintiffs and should be appointed as lead plaintiffs

---

[2] The *Crume* Action additionally names Oleg Frier, Mullen's CEO and Executive Director before Mullen's merger with Net Element, Inc.

3

for the Class. Movants further satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure as they are adequate representatives with claims typical of the other Class Members. Additionally, Movants' selection of Federman as Lead Counsel, and Berry as Liaison Counsel for the Class should be approved because the firms have substantial expertise in securities and complex class action litigation and the experience and resources to efficiently prosecute this action. Accordingly, Movants respectfully submit that they should be appointed Lead Plaintiffs.

### III.     PERTINENT BACKGROUND

Mullen is an Electric Vehicle ("EV") manufacturer and provider. Based in Southern California, Mullen manufactures commercial and consumer EVs at its plants in Indiana and Mississippi. Defendants have inflated the stock price of the Company throughout the Class Period via public statements and filings concerning the Company's production and sales of their consumer and commercial vehicles. Additionally, Defendants made false and misleading statements or omissions regarding the Company's partnerships that boasted revolutionary battery technology, sales partnerships, and financing agreements.

Throughout the course of the Class Period, and as a result of the Defendants' false and/or misleading statements and omissions discussed above, Mullen's stock price was artificially inflated due to the constant barrage of Defendants' false and misleading statements and material omissions of facts. The Company's share price

fell 99% between April 2023 and April 2024.[3] The Company's closing share price on February 3, 2023, was $55,350,000.00, adjusted for reverse splits, including two announced and implemented after the *Maloney* Action was filed.[4] As of February 13, 2025—the day after the *Maloney* Action was filed—the Company's adjusted share price closed at $13.20. By March 13, 2025, the adjusted closing price was $0.83. Investors have been consistently misled by Defendants through press releases, public interviews, and public filings to believe inflated production and sales numbers from Defendants. As a result, many investors stuck with the Company through six reverse stock splits during the Class Period as their investments continued to lose value.

Federman filed the first-filed *Maloney* Action on February 12, 2025, in the United States District Court for the Central District of California against Defendants alleging claims under §§ 10(b) and 20(a) of the Exchange Act. That same day, Federman issued a PSLRA notice advising potential Class Members (as defined

---

[3] Crispus Nyaga, *MULN Stock: Mullen's Collapse from $725 Million to Near Zero*, Apr. 15, 2024, https://invezz.com/news/2024/04/15/muln-stock-mullens-collapse-from-725-million-to-near-zero/.

[4] Yahoo! Historical Data for Mullen Automotive, https://finance.yahoo.com/quote/MULN/history/ (last visited April 11, 2025); *Mullen Automotive Inc. Announces Reverse Stock Split Effective Feb. 18, 2025*, MULLEN (Feb. 13, 2025) https://news.mullenusa.com/mullen-automotive-inc.-announces-reverse-stock-split-effective-feb-18-2025; *Mullen Automotive Inc. Announces Reverse Stock Split Effective April 11, 2025*, MULLEN (Apr. 9, 2025) https://news.mullenusa.com/mullen-automotive-inc.-announces-reverse-stock-split-effective-april-11-2025.

5

below) of, *inter alia*, the claims alleged in the *Maloney* Action and the 60-day deadline for Class Members to move to be appointed as lead plaintiff (the "Notice"). A copy of the Notice is attached as Exhibit 1 to the Declaration of William B. Federman filed herewith ("Federman Decl."). The *Crume* Action was subsequently filed in this District against Mullen, Michery, New, and Frier asserting substantially similar facts and claims arising from a similar class period as the *Maloney* Action.

Both the *Maloney* Action and the *Crume* Action allege that throughout the Class Period, Defendants made materially false and misleading statements and omitted to state material adverse facts regarding Mullen's business, operational and financial results. Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (1) Mullen would implement a reverse stock split on or around May 4, 2023; (2) the true nature of the Company's deals with business partners, including Rapid Response Defense Systems ("RRDS") and Mullen Advanced Energy Operations, LLC ("MAEO"); (3) the testing and capabilities of Mullen's battery technology through its partnership with Lawrence Hardge; and (4) the actual strength (*i.e.*, lack thereof) of Mullen's financing agreements. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities as a result, members of the Class suffered significant losses and damages.

## IV.    ARGUMENT

### A.    THE CLASS PERIOD

The Court should consider a February 3, 2023 to February 13, 2025 class period for the purposes of this motion. The *Maloney* Action asserts a class period between February 3, 2023 and March 13, 2025. The subsequently filed *Crume* Action alleges a class period of May 2022 to March 26, 2025.

A more inclusive class period is typically favored at this stage in the litigation. *Deering v. Galena Biopharma, Inc.*, No. 3:14-cv-00367-SI, 2014 WL 4954398, at *10 (D. Or. Oct. 3, 2014). However, courts will refrain from using the longer class period when the longer period is not viable. *Villare v. ABIOMED, Inc.*, No. 19 Civ. 7319(ER), 2020 WL 3497285, at *5 (S.D.N.Y. June 29, 2020) (the court held that a movant "persuasively argue[d] that there is a risk that the longer class period is a product of gamesmanship . . . . Therefore, the Court finds, on balance, that the shorter class period . . . should be used for purposes of the lead-plaintiff analysis."); *see also Bodri v. GoPro, Inc.*, No. 16-cv-00232-JST, 2016 WL 1718217, at *2, n.2 (N.D. Cal. Apr. 28, 2016) (recognizing "'[t]here is a risk... to blindly accepting the longest class period without further inquiry, as potential lead plaintiffs would be encouraged to manipulate the class period so they had the largest financial interest'" and declining to use longer class period in assessing lead plaintiff motions (citing *In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 434 (S.D. Tex. 2010)). In this situation,

7

a portion of the misstatements and omissions alleged in the *Crume* Action have already been litigated in a prior class action suit.

On September 13, 2024, the Honorable Dolly M. Gee granted preliminary approval of a class action settlement in the case captioned *In re Mullen Automotive Inc Securities Litigation*, 2:22-cv-03026 (the "Previous Class Action"). The Previous Class Action seeks to settle claims brought on behalf of persons and entities that purchased or otherwise acquired Mullen's stock between June 15, 2020 and April 17, 2022. According to the Previous Class Action's consolidated amended complaint, the suit resolves claims arising out of Mullen's and Michery's alleged misstatements or omissions between June 15, 2020 and March 30, 2022 which artificially inflated Mullen's stock price. The Previous Class Action alleges that the truth of these misstatements emerged on or around April 6, 2022 through Hindenburg Research's report (the "Hindenburg Report").[5]

The *Crume* Action's proposed class period contains alleged misstatements and omissions that were litigated in the Previous Class Action. For example, the *Crume* Action alleges that Mullen, Michery, New, and Frier made materially false and misleading statements about the Company's production of certain consumer class vehicles (*i.e.*, the Dragonfly K50 and MX-05 vehicles), citing a June 15, 2020

---

[5] *Mullen Automotive: Yet Another Fast Talking EV Hustle*, Hindenburg Research (April 6, 2022), https://hindenburgresearch.com/mullen/.

press release. The alleged misstatements have already been litigated in the Previous Class Action and are currently in the process of settlement. The *Crume* Action also relies on the Hindenburg Report, which identified as misleading or untruthful Mullen's and Michery's disclosures concerning these vehicles production capabilities and the Company's solid state battery technology. The misstatements related to the Hindenburg Report have also been litigated and are in the process of settlement.

The *Maloney* Action contains none of these overlapping allegations with the Previous Class Action. The filing of the *Maloney* Action effectively disseminated the curative information to the market on February 12, 2025. *See In re CMS Energy Securities Litigation*, 236 F.R.D. 338, 342 (E.D. Mich. 2006) ("the court now finds an appropriate close date for the class period to be May 17, 2002, the day the first complaint was filed in this litigation."). Therefore, this Court should proceed with its analysis for Lead Plaintiffs under Movants' proposed class period of February 3, 2023 to February 13, 2025.

### B.    MOVANTS SHOULD BE APPOINTED LEAD PLAINTIFFS

The PSLRA sets forth procedures for the selection of lead plaintiff in class actions brought under the Exchange Act. The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of class action by the later of (i) 90 days after the date of publication, or (ii) as

soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B).

The PSLRA provides a "rebuttable presumption" that the most "adequate plaintiff" to serve as lead plaintiff is the "person" that:

> (aa) has either filed the complaint or made a motion in response to a notice . . . ;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii); *see also Waterford Twp. Police v. Mattel, Inc.*, No. 17-cv-04732-VAP-KSx, 2017 WL 10667732, at *3 (C.D. Cal. Sept. 29, 2017).

As set forth below, Movants have complied with all the PSLRA's requirements and satisfies all of the PSLRA criteria to be appointed lead plaintiffs. Movants, to the best of their knowledge, have the largest financial interest in this litigation, satisfies the relevant requirements of Rule 23, and is not aware of any unique defense defendants could raise against them that would render them inadequate to represent the Class.[6] Accordingly, Movants respectfully submit that

---

[6] Chiarelli is the owner and manager of CJC Prime Investments LLC. Federman Decl., Ex. 6. As such, Movants are sufficiently related and may seek to serve as lead plaintiffs together under the PSLRA. *In re Network Ass'c, Inc., Securities Litig.*, 76 F. Supp. 2d 1017, 1021–27 (N.D. Cal. 1999).

10

they should be appointed lead plaintiffs. *See In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002) ("If the plaintiff with the largest financial stake in the controversy provides information that satisfies these requirements, she becomes the presumptively most adequate plaintiff").

### 1.  Movants Filed a Timely Motion

On February 12, 2025, Notice was published in connection with the *Maloney* Action pursuant to Section 21D(a)(3)(A) of the PSLRA, 15 U.S.C. § 78u-4(a)(3)(A). Federman Decl., Ex. 1. Therefore, Movants had sixty days (*i.e.*, until April 14, 2025), to file a motion to be appointed as Lead Plaintiffs. As a purchaser of Mullen securities during the Class Period, Movants are members of the proposed class and have timely filed a motion for appointment as lead plaintiffs within sixty days of the notice in compliance with the first PSLRA requirement. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa).

Additionally, as set forth in his PSLRA certification, Chiarelli, individually and on behalf of CJC Prime Investments LLC, attests that he has reviewed the *Maloney* Action's Complaint, adopts the allegations therein, and is willing to serve as a representative of the Class. Federman Decl., Ex. 2.  Accordingly, Movants satisfy the first requirement to serve as lead plaintiff for the Class.

MEMORANDUM OF LAW IN SUPPORT OF MOTION OF CHRISTIAN CHIARELLI AND CJC PRIME INVESTMENTS LLC TO APPOINT LEAD PLAINTIFFS AND APPROVE SELECTION OF LEAD COUNSEL – 2:25-CV-01187

**2. Movants Have the Largest Financial Interest in the Relief Sought By the Class**

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person. . . that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii); *In re Gemstar-TV Guide Int'l. Sec. Litig.*, 209 F.R.D. 447, 450 (C.D. Cal. 2002). At the time of this filing, Movants believe that they have the largest financial interest among the Class Members who filed timely applications for appointment as lead plaintiff and accordingly is presumed to be the "most adequate plaintiffs." While the PSLRA does not specify precisely how to calculate the "largest financial interest," courts in this jurisdiction measure a claimant's financial interest by calculating the movant's approximate losses suffered in connection with the purchases of the subject securities. *Richardson v. TVIA, Inc.*, No. 06-cv-06304 RMW, 2007 WL 1129344, at * 4 (N.D. Cal. Apr. 16, 2007) (citing *Cavanaugh*, 306 F.3d at 730); *In re Cendant Corp. Litig.*, 264 F.3d 201, 263 (3d Cir. 2001) ("The initial inquiry . . . should be confined to determining whether the movant has made a prima facie showing of typicality and adequacy"). Movants purchased Mullen securities during the Class Period at prices alleged to be artificially inflated by Defendants' misstatements and omissions and, as a result, suffered financial harm. Federman Decl., Ex. 3.

MEMORANDUM OF LAW IN SUPPORT OF MOTION OF CHRISTIAN CHIARELLI AND CJC PRIME INVESTMENTS LLC TO APPOINT LEAD PLAINTIFFS AND APPROVE SELECTION OF LEAD COUNSEL – 2:25-CV-01187

District courts "have typically considered the 'Olsten–Lax' factors to determine who has the largest financial interest: '(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered.'" *Richardson*, 2007 WL 1129344, at *3 (quoting *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *Lax v. First Merchs. Acceptance Corp.*, No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997)). "Thus, the only way to make a true apples-to-apples comparison of the "held losses" suffered by each movant is to calculate those losses using the same post-disclosure share price." *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1163 (C.D. Cal. 2015). "In so doing, the court may select accounting methods that are both rational and consistently applied." *Cavanaugh*, 306 F.3d at n. 4. During the Class Period, Movants (1) purchased 4,173,518 shares; (2) retained all of their shares;[7] (3) expended $699,199.35 on their purchases of Mullen's securities; and (4) as result of the disclosures of the fraud, suffered a loss of approximately $574,070.15[8] in connection with their purchases of Mullen securities. Federman

---

[7] Due to six reverse stock splits, Movants now collectively have 0.16 shares remaining from their 4,173,518 shares purchased.

[8] Movants have subtracted from their net losses: the average trade price for the fifty-seven (57) days after the Complaint provided the public notice of Defendants' material misstatements, accounting for the 60:1 reverse stock split implemented on February 18, 2025, multiplied by his total shares purchased.

13

Decl., Ex. 3. To the best of their knowledge, Movants are not aware of any other Class Member that has filed a motion for appointment as lead plaintiff who claims a larger financial interest.[9] As such, Movants satisfy the second PSLRA requirement to be appointed as lead plaintiffs for the Class.

### 3. Movants Satisfy the Requirements of Federal Rule of Civil Procedure 23

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. *See Cavanaugh*, 306 F.3d at 729–30. Fed. R. Civ. P. 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.

In making its determination that movant satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for

---

[9] As noted above, Furthermore, the plaintiffs' certifications in the *Crume* Action show purchases of Mullen stock that clearly overlap with the class period defined in the Previous Class Action of June 15, 2020 through April 17, 2022. In calculating an investor's financial interest, the Court may not consider stock purchased during the Previous Class Action's class period.

14

class certification – a *prima facie* showing that Movants satisfy the requirements of Rule 23 is sufficient. *Cavanaugh*, 306 F.3d at 730–31; *see also Osher v. Guess? Inc.*, No. 01-cv-00871, 2001 WL 861694, at *3 (C.D. Cal. Apr. 26, 2001). At the lead plaintiff stage, "[t]he typicality and adequacy requirements of Rule 23 are the main focus…" and "[e]xamination of the remaining requirements [of Rule 23] are deferred until the lead plaintiff moves for class certification." *Richardson*, 2007 WL 1129344, at *4 (citing *Cavanaugh*, 306 F.3d at 730)); *In re Cendant Corp. Litig.*, 264 F.3d at 263 ("The initial inquiry . . . should be confined to determining whether the movant has made a prima facie showing of typicality and adequacy"). The close alignment of interests between Movants and other Class Members, and Movants' desire to prosecute this action on behalf of the Class, provides ample reason to appoint Movants as Lead Plaintiffs.

### a) Movants' Claims are Typical

Rule 23(a)(3) of the Federal Rules of Civil Procedure requires that, "the claims . . . of the representative parties" be "typical of the claims . . . of the class." A proposed lead plaintiff's claims are typical of the class when the proposed lead plaintiff's claims and injuries arise from the same events or course of conduct that gives rise to other class members' claims and plaintiff's claims are based on the same legal theory. *See Osher*, 2001 WL 861694, at *4. Under Rule 23, a lead plaintiff's "claims are typical 'if he is reasonably coextensive with those of the absent class

15

members; they need not be substantially identical.'" *Id*. (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)).

Movants' claims are typical of the claims asserted by the proposed Class. Like all members of the Class, Movants suffered losses as a result of their Mullen transactions during the Class Period. Movants' claims share substantially similar questions of law and fact with the claims of the members of the Class, and Movants' claims are therefore typical of the members of the Class. Like all members of the Class, Movants allege that Defendants violated federal securities laws by disseminating materially misleading statements concerning Mullen's operations and financial prospects and omitted material facts. Movants' losses, like the losses suffered by all other members of the Class, arise from the artificial inflation of Mullen's stock price caused by Defendants' alleged misrepresentations and omissions. Accordingly, Movants' interests and claims are typical of the interests and claims of the Class.

### b) Movants Are an Adequate Representatives

The Rule 23(a)(4) adequacy requirement is satisfied where it is established that a representative party "will fairly and adequately protect the interests of the class." Accordingly,

> The Ninth Circuit has held that representation is "adequate" when counsel for the class is qualified and competent, the representative's

16

> interests are not antagonistic to the interests of absent class members, and it is unlikely that the action is collusive.

*Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1137 (C.D. Cal. 1999) (*citing In re Northern Dist. of Cal., Dalkon Shield IUD Prod. Liab. Litig.*, 693 F.2d 847, 855 (9th Cir. 1982)). The class representative must also have "sufficient interest in the outcome of the case to ensure vigorous advocacy." *Yanek v. Staar Surgical Co.*, No. 04-cv-8007, 2004 WL 5574358, at *6 (C.D. Cal. Dec. 15, 2004).

The presumption in favor of appointing a plaintiff as lead plaintiff may be rebutted only upon proof "by a purported member of the plaintiff class" that the presumptively most adequate plaintiff:

> (aa) will not fairly and adequately protect the interest of the class; or

> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Here, Movants easily satisfy the adequacy requirements. Movants' financial interest demonstrates that they have sufficient incentive to ensure vigorous advocacy and "no evidence exists to suggest that [Movants are] antagonistic to other members of the class or [his] attorneys, thereby meeting the adequacy of representation requirement." *Yousefi v. Lockheed Martin Corp.*, 70 F. Supp. 2d 1061, 1071 (C.D. Cal. 1999) (citation omitted). Moreover, Movants have retained competent and experienced counsel with the resources and expertise to efficiently and effectively

17

prosecute this action. *See* Federman Decl., Ex. 4 (Federman firm résumé); Ex. 5 (Arnold Firm résumé). In addition, Movants are not aware of any conflict between their claims and those asserted on behalf of the Class. As such, Movants are adequate to represent the Class. Movants are not aware of any unique defenses that Defendants raise against Movants that would render them inadequate to represent the Class. Accordingly, the Court should appoint Movants as Lead Plaintiffs for the Class.

### C.    THE COURT SHOULD APPROVE LEAD PLAINTIFFS' CHOICE OF COUNSEL

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the approval of the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v); *Yanek*, 2004 WL 5574358, at *7. The Court should not disturb the lead plaintiff's choice of counsel unless it is "necessary to protect the interests of the class." *Osher*, 2001 WL 861694, at *4 (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)).

Movants have selected Federman as Lead Counsel and Berry as Liaison Counsel. Federman initiated this action, investigated and drafted the first filed Complaint by actively researching the Class's and the Movants' claims – reviewing publicly available financial and other documents and gathering information in support of the claims against the Defendants. Federman has prosecuted securities fraud class actions and has obtained substantial recoveries on behalf of investors. Furthermore, the firm is experienced in the area of securities litigation and class

18

actions, having been appointed as lead counsel in securities class actions in numerous courts throughout the country. *See* Federman Decl., Ex. 4 (Federman firm résumé); Ex. 5 (Arnold Firm résumé).

As a result of the firms' experience in litigation involving issues similar to those raised in this action, Movants' counsel has the skill and knowledge that will enable them to prosecute this action effectively and expeditiously. Thus, the Court may be assured that by approving Movants' selection of counsel, the members of the Class will receive the best legal representation available.

## V. CONSLUSION

For the foregoing reasons, Movants respectfully requests that the Court issue an Order: (1) appointing Movants as Lead Plaintiffs for the Class; (2) approving Federman as Lead Counsel and Arnold as Liaison Counsel; and (3) granting such other relief as the Court may deem to be just and proper.

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Movants, certifies that this brief contains 4,292 words, which complies with the word limit of L.R. 11-6.1.

Dated: April 14, 2025

Respectfully submitted,

*/s/ William B. Federman*

19

MEMORANDUM OF LAW IN SUPPORT OF MOTION OF CHRISTIAN CHIARELLI AND CJC PRIME INVESTMENTS LLC TO APPOINT LEAD PLAINTIFFS AND APPROVE SELECTION OF LEAD COUNSEL – 2:25-CV-01187

William B. Federman*
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Telephone: (405) 235-1560
Facsimile: (405) 239-2112
wbf@federmanlaw.com

M. Anderson Berry (SBN 262879)
Gregory Haroutunian (SBN 330263)
Brandon P. Jack (SBN 325584)
**CLAYEO C. ARNOLD**
**A PROFESSIONAL CORPORATION**
12100 Wilshire Blvd Suite 800
Los Angeles, CA 90025
Telephone: (747) 777-7748
Fax: (916) 924-1829
aberry@justice4you.com
gharoutunian@justice4you.com
bjack@justice4you.com

*Pro hac vice*

*Counsel for Lead Plaintiff Movant Christian Chiarelli and Proposed Lead Counsel for the Class*

## CERTIFICATE OF SERVICE

I, William B. Federman, hereby declare under penalty of perjury as follows: I am the managing attorney of Federman & Sherwood, with offices at 10205 N. Pennsylvania Ave., Oklahoma City, OK 73120. I am over the age of eighteen.

On April 14, 2025, I electronically filed the forgoing **MEMORANDUM OF LAW IN SUPPORT OF MOTION OF CHRISTIAN CHIARELLI AND CJC**

20

**PRIME INVESTMENTS LLC TO APPOINT LEAD PLAINTIFFS AND APPROVE SELECTION OF LEAD COUNSEL** with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record. Executed on April 14, 2025.

/s/: *William B. Federman*
William B. Federman

MEMORANDUM OF LAW IN SUPPORT OF MOTION OF CHRISTIAN CHIARELLI AND CJC PRIME INVESTMENTS LLC TO APPOINT LEAD PLAINTIFFS AND APPROVE SELECTION OF LEAD COUNSEL – 2:25-CV-01187