POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Counsel for Movant Muhammad Jafri and
Proposed Lead Counsel for the Class*

*[Additional Counsel on Signature Page]*

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JENNIFER MALONEY, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MULLEN AUTOMOTIVE, INC. F/K/A NET ELEMENT, INC., DAVID MICHERY, and JONATHAN NEW,<br><br>Defendants. | Case No. 2:25-cv-01187-MCS-JDE<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF MUHAMMAD JAFRI FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL**<br><br>DATE:  May 12, 2025<br>TIME:  9:00 a.m.<br>JUDGE:  Mark C. Scarsi<br>CTRM:  7C |

CAYDEN CRUME, JAMES LEGRAND, and TODD HOLTON,

        Plaintiffs,

     v.

MULLEN AUTOMOTIVE INC., DAVID MICHERY, JONATHAN NEW, and OLEG FIRER,

        Defendants.

Case No. 2:25-cv-02620-DMG-AGR

# TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ....................................................................2

II.     STATEMENT OF FACTS .........................................................................3

III.    ARGUMENT .............................................................................................6

    A.      THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES ....................................................................................6

    B.      JAFRI SHOULD BE APPOINTED LEAD PLAINTIFF ............................7

        1.      Jafri Is Willing to Serve as Class Representative ....................................8

        2.      Jafri Has the "Largest Financial Interest" ...........................................9

        3.      Jafri Otherwise Satisfies the Requirements of Rule 23 ........................10

        4.      Jafri Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses .......................................13

    C.      LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED ...........................................................................................13

IV.     CONCLUSION ........................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cayden Crume et al v. Mullen Automotive, Inc. et al*,
  No. 2:25-cv-02620 ...............................................................................................1

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) ...........................................................................11

*Hessefort v. Super Micro Comput., Inc.*,
  317 F. Supp. 3d 1056 (N.D. Cal. 2018).............................................................11

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ..............................................................................9

*In re Comverse Technology, Inc. Securities Litigation*,
  No. 1:06-cv-01825 (E.D.N.Y.) .........................................................................14

*In re Petrobras Securities Litigation*,
  No. 14-cv-09662 (S.D.N.Y.)..............................................................................14

*In re Solar City Corp. Sec. Litig.*,
  No. 16-CV-04686-LHK, 2017 WL 363274 (N.D. Cal. Jan. 25, 2017).......................11

*Jennifer Maloney v. Mullen Automotive, Inc. et al*,
  No. 2:25-cv-01187 .........................................................................................1, 8

*Klein v. Altria Group, Inc. et al*,
  No. 3:20-cv-00075 (E.D. Va.) ..........................................................................14

*Knox v. Yingli Green Energy Holding Co.*,
  136 F. Supp. 3d 1159 (C.D. Cal. 2015).............................................................9, 10

*Lax v. First Merchants Acceptance Corp.*,
  No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug. 6, 1997) .........................................9

*Mulligan v. Impax Lab'ys, Inc.*,
  No. C-13-1037 EMC, 2013 WL 3354420 (N.D. Cal. July 2, 2013) ...........................6

*Nicolow v. Hewlett Packard Co.*,
  No. 12-05980 CRB, 2013 WL 792642 (N.D. Cal. Mar. 4, 2013).......................9, 10

*Osher v. Guess?, Inc.*,
   No. CV01-00871LGB(RNBX), 2001 WL 861694
   (C.D. Cal. Apr. 26, 2001) ........................................................................13, 14

*Richardson v. TVIA, Inc.*,
   No. C 06 06304 RMW, 2007 WL 1129344 (N.D. Cal. Apr. 16, 2007) ..................6, 11

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ........................................................................12

*Tai Jan Bao v. SolarCity Corp.*,
   No. 14-CV-01435-BLF, 2014 WL 3945879 (N.D. Cal. Aug. 11, 2014) ....................11

**Statutes**

15 U.S.C. § 78u-4..............................................................................................*passim*

Private Securities Litigation Reform Act of 1995 ..........................................................*passim*

Securities Exchange Act of 1934 .......................................................................1, 2, 7, 11

**Rules**

Fed. R. Civ. P. 23 ............................................................................................*passim*

Fed. R. Civ. P. 42 .............................................................................................1, 2, 6, 7

Movant Muhammad Jafri ("Jafri") respectfully submits this Memorandum of Points and Authorities in support of his motion, pursuant to Federal Rule of Civil Procedure 42 ("Rule 42") and Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for the entry of an Order: (1) consolidating the above-captioned related actions (the "Related Actions"); (2) appointing Jafri as Lead Plaintiff on behalf of a class (the "Class") consisting of all persons or entities who purchased or otherwise acquired publicly traded Mullen Automotive, Inc. ("Mullen" or the "Company") securities between May 1, 2022 and March 26, 2025, inclusive (the "Class Period"); and (3) approving proposed Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.[1]

---

[1] On February 12, 2025, the first-filed of the Related Actions was filed in this Court, styled *Jennifer Maloney v. Mullen Automotive, Inc. et al*, No. 2:25-cv-01187 (the "*Maloney* Action"), alleging a class period including all persons or entities who purchased or otherwise acquired publicly traded Mullen securities "between February 3, 2023 and March 13, 2025 [*sic*], inclusive." *See* Dkt. No. 1 at 1 ¶ 1. Then, on March 26, 2025, the second-filed of the Related Actions, styled *Cayden Crume et al v. Mullen Automotive, Inc. et al,* No. 2:25-cv-02620 (the "*Crume* Action") was filed in this Court, alleging substantially the same wrongdoing as the *Maloney* Action against overlapping defendants and alleging a larger class period including persons or entities who purchased or otherwise acquired Mullen securities "between May 2022 and [March 26, 2025], inclusive." *See Crume* Action, Dkt. No. 1 at 1 ¶ 1. Therefore, without conceding that this is the appropriate class period, to avoid excluding any potential class members, this motion has adopted the larger class period alleged in the *Crume* Action.

## I.   PRELIMINARY STATEMENT

The complaints in the Related Actions (the "Complaints") allege that the above-captioned defendants ("Defendants") defrauded investors in violation of, *inter alia*, the Exchange Act.  Mullen investors, including Jafri, incurred significant losses following the disclosures of the alleged fraud, which caused the prices of Mullen securities to fall sharply, damaging Jafri and other Mullen investors.

Consolidation is appropriate under Rule 42(a) where actions involve common questions of law or fact.  Here, the Related Actions are putative class actions alleging violations of, *inter alia*, the Exchange Act by overlapping defendants arising from substantially the same alleged fraud.  As such, the Related Actions involve common questions of both law *and* fact, and consolidation is plainly warranted.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant that possesses the largest financial interest in the outcome of the litigation and that satisfies the requirements of Federal Rule of Civil Procedure 23 ("Rule 23").  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  During the Class Period, Jafri purchased 2,106,397 shares of Mullen stock, expended $1,064,907 on these transactions, retained 9,920 of his shares of Mullen stock and, as a result of the disclosures of Defendants' alleged fraud, incurred losses of approximately $610,874.  *See* Declaration of Jennifer Pafiti in Support of Motion ("Pafiti Decl."), Exhibit ("Ex.") A.  Accordingly, Jafri believes that he has the largest financial interest in the relief sought in this litigation.  Beyond his considerable financial interest,

Jafri also meets the applicable requirements of Rule 23 because his claims are typical of absent Class members and because he will fairly and adequately represent the interests of the Class.

To fulfill his obligations as Lead Plaintiff and vigorously prosecute the Related Actions on behalf of the Class, Jafri has selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the areas of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume.

Accordingly, Jafri respectfully requests that the Court enter an Order consolidating the Related Actions, appointing Jafri as Lead Plaintiff for the Class, and approving his selection of Pomerantz as Lead Counsel for the Class.

## II.    STATEMENT OF FACTS

According to the Complaints, Mullen and Individual Defendants David Michery ("Michery"), Jonathan New, and Oleg Firer repeatedly engaged in a scheme to inflate Mullen's stock price through press releases making false or misleading statements or material omissions, often before it executed a reverse stock split.  Mullen executed two initial reverse splits on May 24, 2016, and October 4, 2017.  In recent times, Mullen has executed five reverse stock splits: (i) May 3, 2023, at 25:1; (ii) August 10, 2023, at 9:1; (iii) December 20, 2023, at 100:1; (iv) September 16, 2024, at 100:1; (v) February 17, 2025, at 60:1.

In March 2023, the Company initially announced that it was "teaming up with Rapid Response Defense Systems ("RRDS") to fast-track U.S. Federal Government opportunities for potential large-scale vehicle fleet orders."

In April 2023, Mullen announced it was forming a joint venture, Mullen Advanced Energy Operations, LLC, ("MAEO"), with Global EV Technology, Inc., to "advance energy management technologies, starting with electric vehicles and scaling to other energy applications." In a press release announcing the partnership, Mullen stated, in relevant part, that "[t]he founder of Global EV Technology Inc., and chief scientific officer, Lawrence Hardge, is a successful life-long inventor with a storied career of over 30 yrs."

Further, Mullen has completed and/or amended multiple financing agreements with Esousa Holdings.

According to the Complaints, the Company's share price had been artificially inflated due to the constant barrage of Defendants' false and misleading statements and material omissions of facts.

In July 2023, Mullen informed investors that the Company had terminated its relationship with Lawrence Hardge and Global EV Technology, Inc. Shortly thereafter, a report from Nathan Baca (WUSA9) in Washington D.C. was published, stating, in relevant part:

> Court documents show Hardge was sentenced to 26 years in prison for a felony conviction in 2001. He was found guilty of selling unregistered

securities from his home state of Mississippi. Hardge served five years in prison and tried to expunge, or wipe, his criminal record in 2021. A Mississippi judge rescinded Hardge's temporary felony expungement in March 2022, after a judge's order shows allegations surfaced that Hardge used business investor's money to repay the people he defrauded in 2001.

Other articles as early as June 8, 2023, began reporting on Lawrence Hardge's past that Michery and the Company failed to disclose to investors in their press releases and public statements.

The Complaints allege that throughout the Class Period, Defendants made false and misleading statements and/or failed to disclose that: (1) Mullen had no intent of implementing a reverse stock split when in-fact Chief Executive Officer Michery and Mullen believed one was imminent and necessary; (2) Mullen overstates its deals with business partners, including RRDS and MAEO; (3) Mullen overstates its battery technology capabilities and partnerships (i.e., Lawrence Hardge related allegations); (4) Mullen misled the investing public about its reverse splits; (5) Mullen and Michery knew or should have known about Lawrence Hardge's previous convictions for financial crimes and moral turpitude and disclosed this information to investors; (6) Mullen failed to disclose material information about its financing agreements; and (7) as a result, defendants' public statements were materially false and/or misleading at all relevant times.

According to the Complaints, throughout the course of the Company's false and/or misleading statements and omissions discussed above, Mullen's stock price fell over $3.25

MEMORANDUM OF POINTS AND AUTHORITIES - 2:25-cv-01187-MCS-JDE; 2:25-cv-02620-DMG-AGR

5

per share, or 96%, to close at approximately $.015 per share on March 13, 2024, on unusually heavy trading volume, damaging investors.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Jafri and other Class members have suffered significant losses and damages.

## III.   ARGUMENT

### A.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

Consolidation of cases is proper where, as here, the actions involve common questions of law and fact such that consolidation would prevent unnecessary cost or delay in adjudication.  When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters at issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.  Fed. R. Civ. P. 42(a); *see also Richardson v. TVIA, Inc.*, No. C 06 06304 RMW, 2007 WL 1129344, at *2 (N.D. Cal. Apr. 16, 2007); *Mulligan v. Impax Lab'ys, Inc.*, No. C-13-1037 EMC, 2013 WL 3354420, at *2-3 (N.D. Cal. July 2, 2013).

The PSLRA contemplates consolidation where "more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed."  15 U.S.C. § 78u-4(a)(3)(B)(ii).  As such, the PSLRA does not displace the traditional legal standards for consolidation under Rule 42(a).

Each of the Related Actions has been filed in this District alleging similar factual and legal grounds to support allegations of violations of, *inter alia*, Sections 10(b) and 20(a) of the Exchange Act, as well as Rule 10b-5 promulgated thereunder, by overlapping Defendants arising from the public dissemination of false and misleading information to investors. Accordingly, the Related Actions should be consolidated pursuant to Rule 42(a) for all purposes.

## B. JAFRI SHOULD BE APPOINTED LEAD PLAINTIFF

Jafri should be appointed Lead Plaintiff because he has timely filed a motion for appointment as Lead Plaintiff, has the largest financial interest in the litigation to his knowledge, and otherwise strongly satisfies the requirements of Rule 23.

The PSLRA requires the plaintiff who files an action governed by its provisions to publish a notice (the "Notice") to the class within 20 days of filing the action, informing putative class members of: (1) the pendency of the action; and (2) their right to file a motion for appointment as lead plaintiff within 60 days after publication of the Notice. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i). In addition, the PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to the Notice and to do so by the later of (1) 90 days after the date of publication, or (2) as soon as practicable after the Court decides any pending motion to consolidate. *See id.* § 78u-4(a)(3)(B).

Pursuant to the PSLRA, the Court "shall appoint" the "most adequate plaintiff" to serve as lead plaintiff.  *Id.* § 78u-4(a)(3)(B)(i).   The PSLRA provides a "[r]ebuttable presumption" that the "most adequate plaintiff" is the person or group that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;

> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.* § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Jafri satisfies all three of these criteria and thus is entitled to the presumption that he is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

### 1.    Jafri Is Willing to Serve as Class Representative

On February 12, 2025, counsel for plaintiff in the *Maloney* Action caused the statutorily required Notice to be published via *Globe Newswire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, which announced that a securities class action lawsuit had been filed on behalf of Mullen investors, and which advised investors in Mullen securities that they had until April 14, 2025—*i.e.*, 60 days from the date of the Notice's publication—to file a motion to be appointed as lead plaintiff.  *See* Pafiti Decl., Ex. B.

Jafri has filed the instant motion pursuant to the Notice and has attached a sworn Certification attesting that he is willing to serve as a representative for the Class and to

provide testimony at deposition and trial, if necessary.  *See id.*, Ex. C.  Accordingly, Jafri satisfies the first requirement to serve as Lead Plaintiff of the Class.

### 2.      Jafri Has the "Largest Financial Interest"

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . in the determination of the court, has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii).  To the best of his knowledge, Jafri has the largest financial interest of any Mullen investor or investor group seeking to serve as Lead Plaintiff based on the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period (also referred to as "retained shares"); (3) the total net funds expended during the class period; and (4) the approximate losses suffered.  No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 6, 1997).  In accord with courts nationwide, these so-called *Lax* factors have been adopted by courts in the Ninth Circuit, including in this District.  *See Knox v. Yingli Green Energy Holding Co.*, 136 F. Supp. 3d 1159, 1163 (C.D. Cal. 2015) ("District courts have typically considered the [*Lax*] factors to determine who has the largest financial interest[.]" (internal quotation marks and citations omitted)); *Nicolow v. Hewlett Packard Co.*, No. 12-05980 CRB, 2013 WL 792642, at *4 (N.D. Cal. Mar. 4, 2013) (same); *see also, e.g.*, *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001).  Of the *Lax* factors, courts in this Circuit tend to emphasize approximate loss in

assessing a lead plaintiff movant's financial interest within the meaning of the PSLRA. *See Knox*, 135 F. Supp. 3d. at 1163; *Nicolow*, 2013 WL 792642, at *4.

During the Class Period, Jafri: (1) purchased 2,106,397 shares of Mullen stock; (2) expended $1,064,907 on these purchases; (3) retained 9,920 of his shares of Mullen stock; and (4) as a result of the disclosures of Defendants' alleged fraud, incurred losses of approximately $610,874 in connection with his Class Period transactions in publicly traded Mullen securities. *See* Pafiti Decl., Ex. A. To the extent that Jafri possesses the largest financial interest in the outcome of this litigation, he is the presumptive "most adequate" plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### 3.    Jafri Otherwise Satisfies the Requirements of Rule 23

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In making its determination that a lead plaintiff movant satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion

for class certification; instead, a *prima facie* showing that the movant satisfies the requirements of Rule 23 is sufficient.  *See Hessefort v. Super Micro Comput., Inc.*, 317 F. Supp. 3d 1056, 1060-01 (N.D. Cal. 2018); *Tai Jan Bao v. SolarCity Corp.*, No. 14-CV-01435-BLF, 2014 WL 3945879, at *3 (N.D. Cal. Aug. 11, 2014).  "This showing need not be as thorough as what would be required on a class certification motion and only needs to satisfy typicality and adequacy."  *In re Solar City Corp. Sec. Litig.*, No. 16-CV-04686-LHK, 2017 WL 363274, at *5 (N.D. Cal. Jan. 25, 2017).

"The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Richardson*, 2007 WL 1129344, at *4 (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

Jafri's claims are typical of those of the Class.  Jafri alleges, like other Class members, that Defendants violated, *inter alia*, the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning Mullen, or by omitting to state material facts necessary to make the statements they did make not misleading.  Jafri, like other Class members, purchased publicly traded Mullen securities during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and was damaged upon the disclosures of those misrepresentations and/or omissions that drove Mullen's share price downward.

These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

In determining whether the adequacy of representation requirement of Rule 23(a)(4) is met, courts in the Ninth Circuit consider whether "the representative plaintiffs and their counsel have any conflicts of interest with other class members" and ask "will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (citations omitted).

Jafri is an adequate representative for the Class.  Here, Jafri has submitted a sworn Certification declaring his commitment to protect the interests of the Class.  *See* Pafiti Decl., Ex. C.  There is no evidence of antagonism or conflict between Jafri's interests and those of the Class, and Jafri's significant financial interest demonstrates that he has a sufficient interest in the outcome of this litigation to ensure vigorous advocacy. Moreover, Jafri has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as these Related Actions, and submits his choice of Pomerantz to the Court for approval as Lead Counsel pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).  In addition to Pomerantz, Jafri is also represented by the Bronstein, Gewirtz & Grossman, LLC law firm in this litigation.

Further demonstrating his adequacy, Jafri has submitted a sworn Declaration attesting to, *inter alia*, his background, his investing experience, his experience working

with counsel, his understanding of the responsibilities of a Lead Plaintiff appointed pursuant to the PSLRA, his decision to seek appointment as Lead Plaintiff, and the steps that he is prepared to take to prosecute this litigation on behalf of the Class.  *See* Pafiti Decl., Ex. D.

### 4.    Jafri Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses

The presumption in favor of appointing Jafri as Lead Plaintiff may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

(aa)    will not fairly and adequately protect the interest of the class; or

(bb)    is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Jafri's ability and desire to fairly and adequately represent the Class has been discussed above.  Jafri is not aware of any unique defenses Defendants could raise that would render him inadequate to represent the Class.  Accordingly, Jafri should be appointed Lead Plaintiff for the Class.

### C.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain Lead Counsel, subject to the approval of the Court.  *See id.* § 78u-4(a)(3)(B)(v); *Osher v. Guess?, Inc.*, No. CV01-00871LGB(RNBX), 2001 WL 861694, at *4 (C.D. Cal. Apr. 26, 2001).  The

Court should interfere with a Lead Plaintiff's selection only when necessary to "protect the interests of the class." *Id.* § 78u-4(a)(3)(B)(iii)(II)(aa); *Osher*, 2001 WL 861694, at \*4 ("A court may reject the lead plaintiff's choice only if it is necessary to protect the interests of the class.").

Here, Jafri has selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the areas of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in its firm resume submitted herewith. *See* Pafiti Decl., Ex. E. In overview, Pomerantz is a premier firm in the area of securities litigation based in New York, with offices in Chicago, Los Angeles, Paris, France, London, the U.K., and Tel Aviv, Israel. *See id.* For more than 85 years, Pomerantz has represented defrauded investors. *See id.* As lead counsel in *In re Petrobras Securities Litigation*, No. 14-cv-09662 (S.D.N.Y.), Pomerantz secured a recovery of $3 billion on behalf of investors in the securities of Petrobras, the largest settlement ever in a class action involving a foreign issuer and the fifth largest class action settlement ever achieved in the United States. *See id.* Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 1:06-cv-01825 (E.D.N.Y.), in June 2010, and the $90 million settlement in *Klein v. Altria Group, Inc. et al*, No. 3:20-cv-00075 (E.D. Va.) in March 2022. *See id.*

As a result of its extensive experience in litigation involving issues similar to those raised in the instant Related Actions, Jafri's counsel, Pomerantz, has the skill, knowledge, expertise, and experience that will enable the firm to prosecute the Related Actions effectively and expeditiously. Thus, the Court may be assured that by approving Jafri's selection of Pomerantz as Lead Counsel, the members of the Class will receive the best legal representation available.

## IV.   CONCLUSION

For the foregoing reasons, Jafri respectfully requests that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing Jafri as Lead Plaintiff for the Class; and (3) approving Pomerantz as Lead Counsel for the Class.

Dated:  April 14, 2025

Respectfully submitted,

POMERANTZ LLP

*/s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Counsel for Movant Muhammad Jafri and Proposed Lead Counsel for the Class*

BRONSTEIN, GEWIRTZ & GROSSMAN, LLC
Peretz Bronstein
(*pro hac vice* application forthcoming)
60 East 42nd Street, Suite 4600
New York, New York 10165

Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Additional Counsel for Movant Muhammad Jafri*

CERTIFICATE OF SERVICE

I hereby certify that on April 14, 2025, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

*/s/ Jennifer Pafiti*
Jennifer Pafiti