Jenny Pelaez (Bar No. 326765)
  *jpelaez@kslaw.com*
KING & SPALDING LLP
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone:  (213) 443-4355
Facsimile:   (213) 443-4310

Brian P. Miller (*pro hac vice*)
  *bmiller@kslaw.com*
Samantha J. Kavanaugh (*pro hac vice*)
  *skavanaugh@kslaw.com*
Ross E. Linzer (*pro hac vice*)
  *rlinzer@kslaw.com*
KING & SPALDING LLP
Southeast Financial Center
200 S. Biscayne Boulevard, Suite 4700
Miami, Florida  33131
Telephone:  (305) 462-6000
Facsimile:   (305) 462-6100

Attorneys for Defendants Mullen Automotive, Inc.
n/k/a Bollinger Innovations, Inc., David Michery, and Jonathan New

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE MULLEN AUTOMOTIVE, INC. SECURITIES LITIGATION II | Case No. 2:25-cv-01187-DMG-AGR |
| | **DEFENDANTS' NOTICE OF AND MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES** |
| | [Filed concurrently with Proposed Order; Notice of Request and Request for Judicial Notice in Support of Motion to Dismiss, Memorandum of Points and Authorities and Proposed Order; Decl. of Jenny Pelaez with Exhibits] |
| | Honorable Dolly M. Gee |
| | Date: March 6, 2026<br>Time: 9:30 a.m.<br>Courtroom No.: 8C |
| | First Amended Complaint Filed:<br>July 30, 2025 |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on March 6, 2026 at 9:30 a.m., or as soon thereafter as the matter may be heard, before the Honorable Dolly M. Gee, in Courtroom 8C of the United States District Court for the Central District of California, located at 350 W. 1st Street, Los Angeles, California 90012, Defendants Mullen Automotive, Inc. n/k/a Bollinger Innovations, Inc. ("Mullen" or the "Company"), David Michery ("Michery"), and Jonathan New ("New") (together with Michery, the "Individual Defendants") (collectively, "Defendants") will and hereby do move the Court to dismiss the First Amended Complaint filed on July 30, 2025 ("Amended Complaint" or "Am. Compl.") pursuant to Fed. R. Civ. P. 9(b), 12(b)(6), and the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b) ("PSLRA").

Defendants bring this motion on the grounds that Plaintiffs fail to adequately plead the requisite elements under Section 10(b), Rule 10b-5, and Section 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"). Accordingly, for the reasons detailed in the accompanying Memorandum of Points and Authorities, the Amended Complaint should be dismissed, with prejudice.

This Motion is based on this Notice of Motion and Motion to Dismiss and attached Memorandum of Points and Authorities; all filings in this action; such oral argument as may be presented at any hearing; and such other and further matters as the Court may wish to consider and direct the parties to submit.

This Motion is made following the video teleconference of counsel pursuant to L.R. 7-3, which took place on September 24, 2025.[1]

---

[1] Counsel for Defendants who led the meet-and-confer conference was admitted pro hac vice on September 22, 2025, and was unavailable to convene on September 23, 2025 due to observance of the Rosh Hashanah holiday and related travel.

DATED:  September 30, 2025      **KING & SPALDING LLP**

By: */s/ Jenny Pelaez*
JENNY PELAEZ
BRIAN P. MILLER
SAMANTHA J. KAVANAUGH
ROSS E. LINZER

Attorneys for Defendants Mullen Automotive, Inc.
n/k/a Bollinger Innovations, Inc., David Michery,
and Jonathan New

# TABLE OF CONTENTS

**Page(s)**

I.  INTRODUCTION ................................................................................................... 1

II.  FACTUAL BACKGROUND ................................................................................ 3

    A.  The Amended Complaint's allegations ..................................................... 3

    B.  The Amended Complaint intentionally omits highly material disclosures and cautionary language ....................................................... 6

III.  ARGUMENT ....................................................................................................... 8

    A.  The PSLRA imposes heightened pleading standards. ........................... 8

        1.  Section 10(b) and Rule 10b-5. .................................................... 8

        2.  Maker liability claims under Rule 10b-5(b). ............................. 9

        3.  Scheme liability claims under Rule 10b-5(a) and (c). ............. 10

    B.  Plaintiffs' Amended Complaint fails to state a claim. ......................... 11

        1.  The challenged statements were accurate when made. ........... 11

            a.  Statements 1-3 regarding the reverse splits were accurate ........................................................................ 11

            b.  Statements 4-5 and 7-9 regarding EVT were accurate ........................................................................ 11

            c.  Statements 10-17 regarding Volt were accurate. ........... 12

        2.  Forward-looking statements are protected by the PSLRA's safe harbor. ................................................................ 12

        3.  Statements of puffery are also protected. ................................ 13

        4.  Statement 6 was not made by Defendants. ............................. 14

        5.  Plaintiffs fail to plead a strong inference of scienter. ............ 14

            a.  Plaintiffs fail to assert any contemporaneous direct evidence of scienter. ...................................................... 15

b.    The "confidential witnesses" also fail to
substantiate Plaintiffs' theory of fraud. .......................... 16

c.    Signing SEC filings insufficient for scienter. ............... 17

d.    There is no plausible motive for fraud. ......................... 17

6.    Plaintiffs do not sufficiently plead loss causation. ................... 18

7.    Count I must be dismissed because Plaintiffs have not
sufficiently alleged any scheme. ................................................. 19

8.    The Section 20(a) claim fails. ................................................... 22

C.    The Amended Complaint cannot be cured. ....................................... 23

IV.    CONCLUSION ............................................................................................. 23

DEFENDANTS' MOTION TO DISMISS

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ATSI Communications, Inv. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007) ........................................................................ 10, 22

*Bao v. SolarCity Corp.*,
   2016 WL 4192177, at *9 (N.D. Cal. Aug. 9, 2016) ........................................ 17

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988) ................................................................................... 11

*In re BofI Holding, Inc. Sec. Litig.*,
   977 F.3d 781 (9th Cir. 2020) ....................................................................... 19

*Brady v. Top Ships, Inc.*,
   2019 WL 3553999 (E.D.N.Y. Aug. 5, 2019), *aff'd, Onel v. Top
   Ships, Inc.*, 806 F. App'x 64 (2d Cir. 2020) ................................................... 21

*Brody v. Transitional Hosps. Corp.*,
   280 F.3d 997 (9th Cir. 2002) ......................................................................... 9

*Brown v. InnerWorkings, Inc.*,
   2019 WL 4187385 (C.D. Cal. Mar. 27, 2019) ................................................. 9

*Browning v. Amyris, Inc.*,
   2014 WL 1285175 (N.D. Cal. Mar. 24, 2014) ................................................ 16

*Central Bank of Denver v. First Interstate Bank of Denver*,
   511 U.S. 164 (1994) ................................................................................... 10

*In re Cloudera, Inc.*,
   121 F.4th 1180 (9th Cir. 2024) .................................................................... 11

*In re Cutera Sec. Litig.*,
   610 F.3d 1103 (9th Cir. 2010) ..................................................................... 13

*Desai v. Deutsche Bank Sec. Ltd.*,
   573 F.3d 931 (9th Cir. 2009) ..................................................................... 8, 9

*In re Downey Sec. Litig.*,
   2009 WL 736802 (C.D. Cal. Mar. 18, 2009) ................................................. 13

*Dura Pharmaceuticals., Inc. v. Broudo*,
    544 U.S. 336 (2005) ............................................................................ 11, 18

*In re ECOtality, Inc. Sec. Litig.*,
    2014 WL 4634280 (N.D. Cal. Sept. 16, 2014) ...................................... 12

*Hampton v. Aqua Metals, Inc.*,
    2020 WL 6710096 (N.D. Cal. Nov. 16, 2020) ....................................... 13

*In re Hansen Nat. Corp. Sec. Litig.*,
    527 F.Supp.2d 1142 (C.D. Cal. 2007) ............................................... 9, 17

*HBK Master Fund LP v. MaxLinear Inc.*,
    2025 WL 20438 (S.D. Cal. Jan. 2, 2025) ............................................. 20

*Janus Cap. Grp., Inc. v. First Deriv. Traders*,
    564 U.S. 135 (2011) ............................................................................. 14

*Katz v. China Century Dragon Media, Inc.*,
    2011 WL 6047093 (C.D. Cal. Nov. 30, 2011) ...................................... 22

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008) ............................................................. 23

*Lipton v. Pathogenesis Corp.*,
    284 F.3d 1027 (9th Cir. 2002) ............................................................. 18

*Loos v. Immersion Corp.*,
    762 F.3d 880 (9th Cir. 2014) ............................................................... 10

*Lorenzo v. SEC*,
    587 U.S. 71 (2019) ................................................................................. 8

*Macomb Cnty. v. Align Tech., Inc.*,
    39 F.4th 1092 (9th Cir. 2022) ................................................................ 8

*Matrixx Initiatives, Inc. v. Siracusano*,
    563 U.S. 27 (2011) ................................................................................. 9

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
    540 F.3d 1049 (9th Cir. 2008) ........................................... 6, 14, 15, 16

*Mineworkers' Pension Scheme v. First Solar Inc.*,
    881 F.3d 750 (9th Cir. 2018) ............................................................... 19

DEFENDANTS' MOTION TO DISMISS

*Nguyen v. Endologix, Inc.*,
    962 F.3d 405 (9th Cir. 2020) ................................................................ 10

*In re Novatel Wireless Sec. Litig.*,
    830 F.Supp.2d 996 (S.D. Cal. 2011) .................................................... 19

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
    575 U.S. 175 (2015) .............................................................................. 13

*Oregon Pub. Employees Ret. Fund v. Apollo Group Inc.*,
    774 F.3d 598 (9th Cir. 2014) ................................................................ 19

*Par Inv. Partners, L.P. v. Aruba Networks, Inc.*,
    681 Fed. App'x 618 (9th Cir. 2017) ..................................................... 13

*Pino v. Cardone Capital, LLC*,
    2021 WL 3502493 (C.D. Cal. Apr. 27, 2021) ...................................... 13

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
    759 F.3d 1051 (9th Cir. 2014) ........................................................ 10, 17

*Santa Fe Indus., Inc. v. Green*,
    430 U.S. 462 (1977) .............................................................................. 20

*SEC v. Almagarby*,
    92 F.4th 1306 (11th Cir. 2024) ............................................................ 21

*Semegen v. Weidner*,
    780 F.2d 727 (9th Cir. 1985) .................................................................. 9

*Shaw* v. *Digital Equip. Corp.*,
    82 F.3d 1194 (1st Cir. 1996) ................................................................... 6

*In re Silicon Graphics Inc. Sec. Litig.*,
    183 F.3d 970 (9th Cir. 1999) ................................................................ 14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ..................................................................... 1, 10, 14

*Tripp v. Indymac Fin., Inc.*,
    2007 WL 4591930 (C.D. Cal. Nov. 29, 2007) .................................... 18

*Wilson v. Merrill Lynch & Co.*,
    671 F.3d 120 (2d Cir. 2011) ................................................................. 20

DEFENDANTS' MOTION TO DISMISS

*Wochos v. Tesla, Inc.*,
   985 F.3d 1180 (9th Cir. 2021) ........................................................................ 6, 9

*WPP Lux. Gamma Three Sarl v. Spot Runner, Inc.*,
   655 F.3d 1039 (9th Cir. 2011) ............................................................................ 19

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) ................................................................... *passim*

**Statutes**

15 U.S.C. § 78u ............................................................................................ *passim*

Exchange Act Section 10(b) ........................................................................ *passim*

Exchange Act Section 20(a) ........................................................... 3, 22, 23

**Other Authorities**

17 C.F.R. § 240.10b-5 ........................................................................................ 8

Rule 9(b) ............................................................................................ 2, 9, 11

Rule 12(b)(6) .................................................................................................... 11

Rule 10b-5 ........................................................................... 3, 8, 22

Rule 10b-5(a) and (c) ................................................................. 8, 10

Rule 10b-5(b) ................................................................................................ 8

DEFENDANTS' MOTION TO DISMISS

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3

In this putative securities class action, Plaintiffs wrongly submit that Mullen's[2] recent reverse-stock splits – each authorized by shareholder votes and fully disclosed to the market – are tantamount to securities fraud.  While Plaintiffs may be unhappy that their shares were diluted due to those splits – which similarly diluted the Individual Defendants' holdings – the Court should reject their attempt to fabricate a fraudulent scheme.

A more cogent inference is that Mullen, like many startups, has faced bumps in the road as it endeavors to develop new technologies.  Mullen has struggled to maintain a share price of $1, necessary to avoid delisting from NASDAQ, which could impact Mullen's ability to access capital.  Throughout, Mullen has followed corporate formalities and been forthright with the market about its intentions, actions, and accordant risks.

Critically, in the seminal case of *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, the Supreme Court weighed in on the element of scienter in securities class actions. 551 U.S. 308 (2007).  *Tellabs* instructs that an inference of scienter must be more than merely plausible or reasonable – it must be cogent and *at least as compelling* as any opposing inference of nonfraudulent intent.  *Id.* at 314.  Plaintiffs spill much ink alleging an intricate circular scheme that is neither cogent nor compelling.  At bottom, Plaintiffs claim that Defendants have cultivated a group of "favored investors" and continually churn out misrepresentations about the Company to prop up its stock.  While the price is artificially elevated, those "favored investors" exercise their rights to obtain stock and then sell those shares for a profit.  When the share price subsequently declines, Mullen conducts reverse-splits – all to the detriment of the remaining shareholders.  And as alleged, the cycle repeats: Mullen

---

[2] Mullen Automotive, Inc.'s name was changed to Bollinger Innovations, Inc. effective July 28, 2025.  Given that the name change occurred after the putative class period, we refer to the company as "Mullen."

effected seven reverse stock splits during the putative class period.

Plaintiffs ask the Court to believe that the market is so foolish that it would fail to recognize this pattern, and fall for it time and again, while at the same time ignoring Mullen's risk factor disclosures and financial statements. Nor are there any credible allegations as to Defendants' motivation to defraud.

The far more cogent and reasonable explanation is that Mullen is trying to find its way in the market and has relied on what Plaintiffs characterize as "toxic" financing, and effected reverse splits to maintain its NASDAQ listing. While established companies may have access to capital on more preferable terms, Mullen's financing was nevertheless not illegal nor fraudulent.

Plaintiffs' elaborate show of smoke and mirrors cannot satisfy the arduous pleading requirements to survive a motion to dismiss.

First, Plaintiffs have not pled securities fraud with the specificity required by the PSLRA and Rule 9(b). The challenged statements were accurate and did not contain any false or misleading information. Plaintiffs fail to allege any concrete facts – rather than pure opinion and conjecture.[3] The Amended Complaint is replete with facts and figures about Mullen's performance and transactions, <u>none of which were concealed</u>; rather, they come from the Company's securities filings, press releases, and public disclosures.

Second, most of the statements are non-actionable, forward-looking statements that are protected by the PSLRA's safe harbor provision (*see generally,* 15 U.S.C. § 78u-5), designed by Congress to encourage companies to provide investors with information about "plans and objectives of management for future operations." 15 U.S.C. § 78u-5(i)(1)(b).

Third, Plaintiffs do not plead facts establishing the element of scienter as to each of the alleged false and misleading statements, much less the required *strong*

---

[3] The Amended Complaint's reliance on unproven hearsay statements from two anonymous "informants" cannot withstand scrutiny and does not change the analysis.

*inference* of scienter.

Fourth, Plaintiffs fail to sufficiently plead the required element of loss causation. The Amended Complaint does not establish a plausible proximate connection between the challenged statements and Plaintiffs' alleged losses.

Fifth, with respect to the scheme claims, Plaintiffs cannot point to anything beyond their same weak misrepresentation allegations and do not allege any market manipulation or conduct that artificially affected market activity.

The Amended Complaint should be dismissed with prejudice.

## II.     FACTUAL BACKGROUND

### A.     The Amended Complaint's allegations.[4]

Mullen, a Southern California-based technology and automotive company building electric vehicles, trades on the Nasdaq Stock Market, LLC ("NASDAQ") under the "BINI" ticker symbol.[5]

Plaintiffs assert a putative securities class action against Mullen, Michery (Mullen's CEO), and New (Mullen's CFO) under Section 10(b) of the Exchange Act and Rule 10b-5, on behalf of all persons and entities who purchased or otherwise acquired Mullen stock between November 14, 2022 and June 2, 2025.[6] Am. Compl. ¶ 1. Plaintiffs also assert claims against Michery and New for control person liability under Section 20(a) of the Exchange Act.

In Counts I and II, Plaintiffs challenge 17 statements made in press releases, securities filings, and other public statements:

### Statements regarding intent to effect reverse split.

1.   Mullen's January 25, 2023 press release ("Statement 1") stated that it had "***no plans at the current time to effect a reverse split***." (Am. Compl. at ¶ 108).

---

[4] Recitation of the allegations in no way concedes their validity.

[5] On July 28, 2025, Mullen's ticker symbol changed along with its name.

[6] To unduly expand the class period, the start date is more than two months before the first purported misrepresentation and the end date is three months after the last purported corrective disclosure.

2.    Mullen's February 14, 2023 Q1 FY2023 10-Q ("Statement 2") advised it "***does not plan***" to effect a reverse stock split, which was approved by shareholders, before September 6, 2023.  (*Id*. at ¶ 110).

3.    Mullen's February 14, 2023 press release ("Statement 3") advised it "***does not plan***" to effect a reverse stock split, which was approved by shareholders, before September 6, 2023.  (*Id*. at ¶ 112).

Plaintiffs challenge these three statements regarding Mullen's then-stated lack of plans to effect a reverse split as of January/February 2023.  Ultimately, Mullen made a different decision for listing purposes because its stock price fell below $1.00, and effected a split on May 4, 2023, the corresponding alleged corrective disclosure.  *Id*. at ¶ 130.

**Statements regarding Mullen Advanced Energy Operations ("MAEO").**

4.    Mullen's April 18, 2023 press release ("Statement 4") announced it was partnering with Global EV Technology, Inc. and EV Technologies LLC ("EVT") and their founder Lawrence Hardge to create MAEO, and contained background information about Mr. Hardge.  (*Id*. at ¶¶ 119-120).

5.    Mullen's April 20, 2023 press release ("Statement 5") announced "exciting and groundbreaking tests results" of the joint venture technology.  (*Id*. at ¶¶ 122-123).

6.    A statement by Lawrence Hardge – not any Defendant – on April 20, 2023 ("Statement 6") regarding a contract with Saudi Arabia.  (*Id*. at ¶ 126).

7.    Mullen's May 15, 2023 press release ("Statement 7") regarding the testing of Energy Management Module technology and battery testing.  (*Id*. at ¶ 132).

8.    Mullen's May 15, 2023 Q2 FY2023 10-Q ("Statement 8") included a discussion about the deal with EVT.  (*Id*. at ¶ 134).

9.    Mullen's May 15, 2023 press release ("Statement 9") discussed the deal with EVT.  (*Id*. at ¶ 136).

Plaintiffs challenge these six statements, alleging that Hardge's battery technology did not actually exist and that his testing results were false, without any evidence that Mullen knew.  Plaintiffs allege various partial corrective disclosures in June/July 2023.  *Id*. at ¶¶ 140-153.

**Statements regarding Volt Mobility ("Volt").**

10. Mullen's August 26, 2024 press release ("Statement 10") announced the purchase agreement with Volt. (*Id*. at ¶ 165).

11. Michery's first August 26, 2024 tweet ("Statement 11") announced Volt's vehicle order and that the first round of deliveries "to begin immediately." (*Id*. at ¶ 167).

12. Michery's second August 26, 2024 tweet ("Statement 12") announced Volt's vehicle order and that the initial vehicle shipment "to begin immediately." (*Id*. at ¶ 169).

13. Michery's third August 26, 2024 tweet ("Statement 13") generally describing the Volt agreement. (*Id*. at ¶ 171).

14. Mullen's August 26, 2024 tweet that was reposted by Michery ("Statement 14") generally describing the Volt agreement. (*Id*. at ¶ 173.)

15. Mullen's September 20, 2024 press release ("Statement 15") mentioned that four vehicles were delivered under the Volt agreement. (*Id*. at ¶ 179.)

16. Mullen's November 8, 2024 prospectus amending its registration statement ("Statement 16") generally described the Volt agreement. (*Id*. at ¶ 183.)

17. Mullen's January 24, 2025 FY2024 10-K ("Statement 17") included a discussion about the Volt agreement. (*Id*. at ¶ 186.)

Plaintiffs allege these eight statements regarding Mullen's agreement with Volt were false and misleading in describing the agreement and failing to expound on issues relating to homologation, the approval required for certifying vehicles for regulatory and safety standards in the U.A.E. Plaintiffs contend the corrective disclosure was the announcement of the termination of the agreement on March 20, 2025. *Id*. at ¶ 192.

**Overview of supposed scheme.**

In Count I, Plaintiffs allege misrepresentations purportedly intended to artificially raise Mullen's stock price. Once the stock price was "pumped up," Plaintiffs contend Mullen sold warrants and convertible notes to preferred investors who would then sell common stock to retail investors for a profit. Plaintiffs further allege that when Mullen's positive statements proved to be illusory, the stock price fell. Mullen would then purportedly effect a reverse stock split to meet the

5

NASDAQ's $1 bid price requirement, and the cycle would begin anew. *Id.* at p. 19, ¶¶ 74-99.

Plaintiffs assert that this scheme allowed Michery to use Mullen as a "personal slush bankroll to fund his lavish lifestyle and side projects" as his "gravy train." *Id.* at ¶ 73. Defendants categorically reject these assertions and deny any impropriety.

### B. The Amended Complaint intentionally omits highly material disclosures and cautionary language.

Plaintiffs fail to cite highly material disclosures and cautionary language that gut their claims. While Plaintiffs opportunistically seize upon portions of Defendants' public statements, they omit accompanying cautionary statements, which the PSLRA mandates this Court consider. 15 U.S.C. § 78u-5(e).

The Court may properly consider Mullen's SEC filings and press releases – including all risk disclosures and cautionary statements – during the purported class period in determining the Amended Complaint's sufficiency. *See id.*; *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1185 (9th Cir. 2021). This mandatory look beyond the four corners prevents Plaintiffs from "excising an isolated statement from a document and importing it into the complaint, even though the surrounding context imparts a plainly non-fraudulent meaning to the allegedly wrongful statement." *Shaw* v. *Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996); *see also Metzler Inv. GMBH v. Corinthian Colls., Inc.,* 540 F.3d 1049, 1069 (9th Cir. 2008). Yet, selective reference is one strategy Plaintiffs employ to pursue their specious claims.

Plaintiffs omit that each challenged press release contains cautionary language explicitly warning the public that certain statements were forward-looking. *See, e.g.*, Feb. 14, 2023 Press Release (Statement 3) ("All forward-looking statements involve significant risks and uncertainties that could cause actual results to differ materially from those expressed or implied in the forward-looking statements . . . Forward-looking statements speak only as of the date they are made and should not be relied upon as representing Mullen's plans and expectations as of any subsequent date.").

Plaintiffs similarly omit material risk disclosures in SEC filings. Those disclosures warned of the *precise* business risks that could negatively impact the Company's stock price and are the risks Plaintiffs now accuse Defendants of concealing. A few examples:

● Our stockholders are subject to significant dilution upon the occurrence of certain events which could result in a decrease in our stock price;

● Our commitments to issue shares of Common Stock or securities that are convertible into shares of Common Stock may cause significant dilution to stockholders;

● We may not be able to maintain compliance with continued listing requirements of the NASDAQ Capital Market;

● We will require substantial additional financing to effectuate our business plan;

● We have not yet manufactured or sold any production vehicles to customers and may never develop or manufacture any vehicles;

● We may not be able to develop, manufacture and obtain regulatory approvals for a car of sufficient quality to appeal to customers on schedule or at all;

● Reservations for our vehicles are cancellable;

● Doing business internationally creates operational and financial risks;

● Our vehicles are subject to various safety standards and regulations that we may fail to comply with;

● The concentrated voting control of David Michery, Mullen's founder; potential conflicts of interest; and

● There is substantial doubt about our ability to continue as a going concern.

*See* Form 10K, dated January 13, 2023. Further, Mullen's securities filings are replete with discussion of reverse stock splits and associated risks. *See, e.g.,* ECF No. 76-17. This context for Plaintiffs' selective references shows that Plaintiffs'

claims are no more than an opportunistic attempt to capitalize on Mullen's challenges.

## III.    ARGUMENT

### A.    The PSLRA imposes heightened pleading standards.

#### 1.    Section 10(b) and Rule 10b-5.

The Amended Complaint, alleging violations of Section 10(b) of the Exchange Act, must meet the PSLRA's "[e]xacting pleading requirements," which, as the Ninth Circuit has stressed, "present no small hurdle for the securities fraud plaintiff." *Macomb Cnty. v. Align Tech., Inc.*, 39 F.4th 1092, 1096 (9th Cir. 2022).

Implementing Section 10(b), SEC Rule 10b-5 (17 C.F.R. § 240.10b-5) explains it is unlawful:

> (a) To employ any device, scheme, or artifice to defraud,

> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

"Section 10(b) . . . bars conduct involving manipulation or deception, manipulation being practices that are intended to mislead investors by artificially affecting market activity, and deception being misrepresentation, or nondisclosure intended to deceive." *Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931, 938 (9th Cir. 2009). Claims arising under Rule 10b-5(a) and (c) are "scheme liability" claims, and claims arising under Rule 10b-5(b) are "maker liability" claims. *See Lorenzo v. SEC*, 587 U.S. 71, 79 (2019). Plaintiffs purport to bring both a scheme liability claim against all Defendants (Count I), and a maker liability claim against all Defendants

(Count II).

Regardless of whether a Section 10(b) plaintiff alleges a misrepresentation, omission, or manipulation, he must plead and prove the following elements:

> "(1) . . . use or employ[ment of] any manipulative or deceptive device or contrivance;
>
> (2) scienter, i.e. wrongful state of mind;
>
> (3) a connection with the purchase or sale of a security;
>
> (4) reliance, often referred to . . . as 'transaction causation;'
>
> (5) economic loss; and
>
> (6) loss causation, i.e. a causal connection between the manipulative or deceptive device or contrivance and the loss."

*Desai*, 573 F.3d at 939.  Each element must be supported by particularized facts that satisfy Fed. R. Civ. P. 9(b) *and* the heightened pleading standards of the PSLRA. *Brown v. InnerWorkings, Inc.*, 2019 WL 4187385, at *3 (C.D. Cal. Mar. 27, 2019) (citations omitted).

### 2.    Maker liability claims under Rule 10b-5(b).

For a maker claim, Plaintiffs must first identify "each statement alleged to have been misleading" and "the reason or reasons why [it was] misleading."  15 U.S.C. § 78u-4(b)(1); *Wochos*, 985 F.3d at 1188.  This step requires specific contemporaneous facts, and bars pleading "fraud by hindsight."  *In re Hansen Nat. Corp. Sec. Litig.*, 527 F.Supp.2d 1142, 1151 (C.D. Cal. 2007).  An omitted fact is material only if "a reasonable investor" would have viewed it "as having significantly altered the 'total mix' of information made available."  *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011).  A merely incomplete statement is not actionable.  *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002).

Second, Plaintiffs are required "with respect to **each act or omission alleged** . . . [to] state **with particularity** facts giving rise to a **strong inference** that

the defendant acted with the required state of mind." § 78u-4(b)(2) (emphasis added).  To satisfy this standard, all the facts alleged, taken together, must give rise to an inference of scienter that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314.  As the Ninth Circuit recognizes, "[g]iven the substantial costs that securities fraud litigation can impose [on public companies and their shareholders], the 'strong inference' standard reflects Congress's attempt to halt early on securities litigation that lacks merit or is even abusive." *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 414 (9th Cir. 2020).

Third, the PSLRA "safe harbor" precludes liability for forward-looking statements if they coincide with meaningful cautionary language identifying important factors that could cause results to differ materially from what is projected. 15 U.S.C. § 78u-5(c)(1)(A)(i); *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1058 (9th Cir. 2014).  The safe harbor extends to "any statement regarding (1) financial projections, (2) plans and objectives of management for future operations, (3) future economic performance, or (4) the assumptions underlying or related to any of these issues." *Id*.

Fourth, Plaintiffs must "plausibly allege" loss causation.  *Loos v. Immersion Corp.*, 762 F.3d 880, 890 (9th Cir. 2014).

### 3.    Scheme liability claims under Rule 10b-5(a) and (c).

"Because a claim for market manipulation is a claim for fraud, it must be pled with particularity under Rule 9(b)." *ATSI Communications, Inv. v. Shaar Fund, Ltd.* is also instructive.  493 F.3d 87, 101 (2d Cir. 2007).

A defendant may not be held liable for aiding and abetting an alleged scheme – each defendant must be primarily liable under the securities laws and engage in his or her own deceptive conduct.  *Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164 (1994).

**B.      Plaintiffs' Amended Complaint fails to state a claim.**

The Amended Complaint must be dismissed under Rules 9(b), 12(b)(6), and the PSLRA because Plaintiffs have failed to meet these heightened pleading requirements.

### 1.      The challenged statements were accurate when made.

To prevail on a Section 10(b) claim, Plaintiffs must show either that Defendants' statements contained material falsehoods, *see Dura Pharmaceuticals., Inc. v. Broudo*, 544 U.S. 336, 341 (2005), or that Defendants' statements omitted material information in a manner that made the statements misleading, *see Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988).  Plaintiffs "cannot rely on hindsight; rather, [they] must explain why the statements were false or misleading at the time they were made."  *In re Cloudera, Inc.*, 121 F.4th 1180, 1187 (9th Cir. 2024).  Plaintiffs fail to sufficiently allege that the challenged statements were anything but reasonably believed to be accurate.

#### a.      Statements 1-3 regarding the reverse splits were accurate.

Plaintiffs are correct that Mullen ultimately changed course and effectuated a reverse stock split earlier than September 2023.  But that does not render statements about the Company's plans false when made.  Plaintiffs acknowledge circumstances changed and "Mullen's stock price again fell substantially below the NASDAQ's $1.00 Bid Price Requirement."  Am. Compl. at ¶ 130.  Accordingly, Mullen's calculus changed.  Plaintiffs have not sufficiently alleged Statements 1-3 were false simply by hindsight.

#### b.      Statements 4-5 and 7-9 regarding EVT were accurate.

Plaintiffs claim that EVT statements were false and misleading because the battery technology was not "known verified technology," "did not actually exist," and because Hardge's prior conviction – that was disclosed – was not expunged.  *Id.* at ¶¶ 118-153.  Plaintiffs ignore that Mullen disclosed the operative Letter of Agreement and repeatedly emphasized it was reasonably relying on representations

regarding testing while specifically disclosing the potential they were inaccurate. *See* ECF No. 76-10.  Defendants reasonably believed that these statements were truthful when made.

### c.    Statements 10-17 regarding Volt were accurate.

The crux of Plaintiffs' claims regarding Volt are Defendants obscured the homologation issue.  Not so.  Mullen disclosed the operative Purchase Agreement with Volt that thoroughly addressed the issue.  *See* ECF No. 76-22.  That the deal was ultimately unsuccessful does not render statements false when made.

### 2.    Forward-looking statements are protected by the PSLRA's safe harbor.

Plaintiffs' claims also are barred by the PSLRA's safe harbor for forward-looking statements.  A forward-looking statement includes "statement[s] containing … financial items" or "statement[s] of the plans and objectives of management for future operations, including plans or objectives relating to the products … of the issuer."  15 U.S.C. § 78u-5(i)(1)(A) & (B).  That **precisely** describes the bulk of the statements at issue.  *See, e.g.*, Statements 1-3 (that Mullen had "no plans at the current time" or "does not plan" to effect a reverse split).  Statements 4-5, 7-10, 15-17 are similarly forward-looking statements replete with discussions of plans and objectives that also caution the market regarding specific risks Mullen may encounter.  Plaintiffs conspicuously overlook this dispositive language.

Similarly, statements expressing excitement about *future* shipments and *prospects* of technology and partnerships are forward-looking and contemporaneous with other company statements containing cautionary language.  *See, e.g.,* Statement 11 ("deliveries ***to begin*** immediately") and Statement 12 ("initial vehicle shipment ***to begin*** immediately").  *See* 15 U.S.C. § 78u-5(i)(1)(B).  Courts have held similar statements to be forward-looking.  *See, e.g., In re ECOtality, Inc. Sec. Litig.,* 2014 WL 4634280, at *5 (N.D. Cal. Sept. 16, 2014) (the statement "we'll begin

deliveries … by Q3 of this year" was forward-looking and "inactionable.").

A forward-looking statement is protected if identified as such and "accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially[.]" *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111 (9th Cir. 2010) (quoting 15 U.S.C. § 78u-5(c)(1)). A person "shall not be liable" for making a forward-looking statement protected under the safe harbor. 15 U.S.C. § 78u-5(c)(1). Each press release so cautioned investors. *See* Statements 1-5, 7, 9-10, 15.

Simply put, Plaintiffs cannot plead their way around the fact that Mullen disclosed the very risks that prompted this strike suit. *See Par Inv. Partners, L.P. v. Aruba Networks, Inc.*, 681 Fed. App'x 618 (9th Cir. 2017) (failure to disclose information not actionable where detailed disclosures generally warned of the risks at issue); *see also Hampton v. Aqua Metals, Inc.*, 2020 WL 6710096, at *6-8 (N.D. Cal. Nov. 16, 2020) (granting dismissal where SEC filings warned of risks underlying the complaint, including that technology might not perform as expected).[7]

### 3.    Statements of puffery are also protected.

Further, comments like Statement 5 ("exciting and groundbreaking" and "we believe this technology is a perfect fit"), and elsewhere expressing positivity about future business objectives, are textbook corporate optimism. *See, e.g.*, *In re Downey Sec. Litig.*, 2009 WL 736802, at *6 (C.D. Cal. Mar. 18, 2009) (statements of "hope, opinion, or belief" inactionable). Lacking are particularized facts suggesting Defendants did not "actually" believe what was said or that there was "no reasonable basis" for the beliefs expressed. *See Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 185-96 (2015) (requiring allegations of both

---

[7] "The bespeaks caution doctrine protects affirmative, forward-looking statements from becoming the basis for a securities fraud claim when they are accompanied by cautionary language or risk disclosure." *Pino v. Cardone Capital, LLC*, 2021 WL 3502493, at *8 (C.D. Cal. Apr. 27, 2021).

1  objective and subjective falsity).

2  **4.    Statement 6 was not made by Defendants.**

3  In conclusory fashion and without factual support, Plaintiffs weakly allege

4  that Statement 6 was made by Hardge as the actual or apparent agent of Mullen and

5  MAEO.  Am. Compl. at ¶ 126.  Because none of the Defendants were the maker, it

6  is not actionable.  *See Janus Cap. Grp., Inc. v. First Deriv. Traders*, 564 U.S. 135,

7  142 (2011).

8  **5.    Plaintiffs fail to plead a strong inference of scienter.**

9  Plaintiffs' claims also independently fail because they do not plead facts that

10 give rise to a strong inference of scienter.

11 Plaintiffs must, "with respect to ***each act or omission alleged*** . . ., state ***with***

12 ***particularity*** facts giving rise to a ***strong inference*** that the defendant acted with the

13 required state of mind."  15 U.S.C. § 78u-4(b)(2)(A) (emphasis added); *see also*

14 *Tellabs*, 551 U.S. at 314.  This state of mind must be alleged "in great detail [by]

15 facts that constitute strong circumstantial evidence of deliberately reckless or

16 conscious misconduct," coming "closer to demonstrating intent, as opposed to mere

17 motive and opportunity."  *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 974

18 (9th Cir. 1999).  With respect to forward-looking statements not accompanied by

19 meaningful cautionary language, scienter requires "actual knowledge" that the

20 statement was false when made.  15 U.S.C. § 78u-5(c).

21 In assessing scienter allegations, the Court "must engage in a comparative

22 evaluation; it must consider, not only inferences urged by the plaintiff" but also

23 "competing [non-fraudulent] inferences" and "nonculpable explanations" urged by

24 defendants that may be "rationally drawn from the facts alleged" (*Tellabs*, 551 U.S.

25 at 314), including "inferences unfavorable to the plaintiffs."  *Metzler*, 540 F.3d at

26 1061.

27 Under *Tellabs* and Ninth Circuit law, the Court must conduct a two-part

28 inquiry for scienter: first, the Court must determine whether any of the allegations,

14

standing alone, are sufficient to create a strong inference of scienter; second, if no individual allegation is sufficient, the Court must "conduct a 'holistic' review of the same allegations to determine whether the insufficient allegations combine to create a strong inference of intentional conduct or deliberate recklessness." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 992 (9th Cir. 2009).  Here, the competing, non-fraudulent inferences are far more cogent and compelling than any inference that Defendants intended to defraud shareholders.

Plaintiffs' sparse scienter allegations fail to adequately plead that Defendants: (1) possessed conflicting contrary information *at the time* statements were made; and (2) recklessly or intentionally disregarded such contrary information.  Indeed, Plaintiffs' entire case is built on flimsy claims and unreliable informants.

Regarding the Individual Defendants, Plaintiffs conveniently omit that their shares were diluted with each split as well.  And the significant compensation that Plaintiffs harp upon is merely on paper, in the form of warrants and options that were never in the money and were not sold.

The more plausible inference is that Mullen was addressing, and promptly disclosing, any challenges faced in its business, as well as promoting its future business objectives.  Plaintiffs' generalizations about Michery ignore that scienter is not demonstrated by executives doing what they can to ensure a company remains a going concern.  Plaintiffs' generalized scienter allegations are plainly inadequate.

### a.    Plaintiffs fail to assert any contemporaneous direct evidence of scienter.

Plaintiffs must allege "***specific contemporaneous statements or conditions*** that demonstrate the intentional or the deliberately reckless false or misleading nature of the statements when made." *Metzler*, 540 F.3d at 1066 (emphasis added) (citation omitted).  Yet, the Amended Complaint lacks any facts – much less particularized facts – showing the contemporaneous mental state of any Defendant. As the Ninth Circuit has recognized, "corporate management's general awareness of

the day-to-day workings of the company's business does not establish scienter – at least *absent some additional allegation of specific information conveyed to management and related to the fraud.*" *Id*. at 1068 (emphasis added).

There are absolutely no *specific*, reliable allegations showing Defendants had information that the challenged statements were misleading.

### b. The "confidential witnesses" also fail to substantiate Plaintiffs' theory of fraud.

Plaintiffs' claims also depend on the hearsay statements of two anonymous, purported confidential witnesses, "CW1" and "CW2." Am. Compl. ¶¶ 60-67, 76-77, 163-164, 180. Where claims rely on purported confidential informants to try to satisfy the PSLRA's rigorous pleading standard, Plaintiffs "must pass two hurdles": (1) the alleged witnesses must be described with sufficient particularity "to establish their reliability and personal knowledge"; and (2) "those statements which are reported by confidential witnesses with sufficient reliability and personal knowledge must themselves be indicative of scienter." *Zucco*, 552 F.3d at 995. "[T]he Court may disregard confidential witness statements that are speculative, lack specificity, or are not based on personal knowledge." *Browning v. Amyris, Inc.*, 2014 WL 1285175, at *18 (N.D. Cal. Mar. 24, 2014).

The confidential witnesses here, both *former* employees, do not substantiate Plaintiffs' theory of fraud. There is insufficient detail to show that they had contemporaneous personal knowledge of Defendants' activities. Plaintiffs do not allege that CW1 or CW2 witnessed any specific instances where, for example, the Individual Defendants discussed any purported scheme, financing, reverse splits, or EVT. Indeed, there are no allegations that CW1 ever met, or even spoke with, Michery, that he worked in the main office, or that he attended any executive-level meetings. The lone allegation regarding Volt homologation issues derived from CW1 is non-specific and not attributed to Michery or New. Am. Compl. ¶¶ 163-

164, 180.[8]  And it is dubious that CW2, in a sales and marketing role for a short tenure, would have the level of access and knowledge to support a blanket allegation that Michery had approval rights over every Company payment.  And where is the fraud in that alleged procedure?

Plaintiffs also do not provide sufficient facts to support any contemporaneous personal knowledge of the falsity of the challenged statements or the state of mind of the Individual Defendants when made.  *See Intuitive Surgical*, 759 F.3d at 1063 (confidential informants did not create a strong inference of scienter because they "lack first hand knowledge regarding what the individual defendants knew or did not know"); *Bao v. SolarCity Corp.*, 2016 WL 4192177, at *9 (N.D. Cal. Aug. 9, 2016) ("CW 4 does not even assert knowledge of Individual Defendants' state of mind."), *aff'd*, 884 F.3d 844 (9th Cir. 2018).

The Court should not find their statements reliable or supportive of scienter.

### c.    Signing SEC filings insufficient for scienter.

Generally, merely signing an SEC filing does not give rise to a strong inference of scienter, unless there are allegations that the defendants knew of alleged misstatements contained within the SEC filings.  *Hansen*, 527 F.Supp.2d at 1159.  Here, there are no specific facts to support such allegations.

### d.    There is no plausible motive for fraud.

Plaintiffs also fail to allege any motive for fraudulently inflating the stock price or devising any scheme.

### (i)    Stock sales were not suspicious.

To be "suspicious," sales must be "dramatically out of line with prior trading practices at times calculated to maximize the personal benefit from undisclosed inside information." *Zucco*, 552 F.3d at 1005.  Three factors are considered: "(1) the

---

[8] Without any specific facts, Plaintiffs allege that, per CW1, Mullen manipulated its financial reporting regarding the recognition of certain revenue.  Am. Compl. ¶ 77. This is a red herring: Plaintiffs do not challenge Mullen's financial reporting as false or misleading.

amount and percentage of shares sold by insiders; (2) the timing of the sales; and (3) whether the sales were consistent with the insider's prior trading history." *Id.* Plaintiffs' failure to address these factors is fatal to their scienter allegations.

Plaintiffs point to stock transactions by Michery and New.  Am. Compl. at ¶¶ 218-226.  But each only had a <u>single sale</u> in early 2023, at the beginning of the class period and prior to any alleged scheme.  Michery's sale was small relative to his holdings; he retained in excess of 88% of his holdings.  And New's sale, for less than $40,000, was pursuant to a 10b5-1 trading plan.  These are plainly insufficient to support scienter.  *See* ECF Nos. 76-8 & 76-9; *Tripp v. Indymac Fin., Inc*., 2007 WL 4591930, at *4-5 (C.D. Cal. Nov. 29, 2007) (dismissing for lack of scienter where individuals sold no stock or the sales "were relatively small" given overall holdings); *see also Lipton v. Pathogenesis Corp.,* 284 F.3d 1027, 1038 (9th Cir. 2002) (scienter cannot be pled merely by alleging that executives possess motive and opportunity to enhance a company's business prospects).

### (ii)    Alleged "slush fund" does not support scienter.

It is not credible to allege that Michery would embark on a scheme to use Mullen as a slush fund.  More plausible is that his efforts were motivated by a desire for the company he built to succeed – and at that time, he might realize his booked compensation.  Plaintiffs illogically ask the Court to believe that Michery would jeopardize the entire Company, his holdings, and his reputation all for sports tickets (with no allegations he attended any games), car maintenance, and a purported salary for his daughter.  Their theory does not withstand scrutiny.

### 6.    Plaintiffs do not sufficiently plead loss causation.

The Amended Complaint also must be dismissed for failure to plead facts establishing "loss causation," *i.e.*, that the alleged economic loss was caused by Defendants' purported fraud.  Plaintiffs must sufficiently allege a causal connection between the alleged misrepresentations and economic loss incurred.  *See Dura*, 544 U.S. at 345-46; *see also* 15 U.S.C. § 78u-4(b)(4); *Mineworkers' Pension Scheme v.*

*First Solar Inc.*, 881 F.3d 750, 753 (9th Cir. 2018).  In the Ninth Circuit, Section 10(b) plaintiffs must plead this with particularity.  *Oregon Pub. Employees Ret. Fund v. Apollo Group Inc.*, 774 F.3d 598, 604-05 (9th Cir. 2014).

"To establish loss causation in a fraud-on-the-market case, the plaintiff must show that after purchasing her shares and before selling . . .  (1) the truth became known, and (2) the revelation caused the fraud-induced inflation in the stock's price to be reduced or eliminated."  *In re BofI Holding, Inc. Sec. Litig.,* 977 F.3d 781, 789 (9th Cir. 2020).  "The most common way for plaintiffs to [adequately allege] that 'the truth became known' is to identify one or more corrective disclosures."  *Id.* at 790.  A "disclosure that does not reveal anything new to the market is, by definition, not corrective."  *In re Novatel Wireless Sec. Litig.*, 830 F.Supp.2d 996, 1019 (S.D. Cal. 2011).

Plaintiffs attempt to allege that the various information about the May 2023 reverse split, the information about the EVT agreement, and the cancellation of the Volt agreement are corrective disclosures because they purportedly revealed the "truth" about Defendants' misstatements and omissions.  But because Plaintiffs attempt to allege both misrepresentations and a scheme, the Amended Complaint is muddled and unclear whether these are corrective disclosures or if the share price declined due to the impact of the reverse splits or other factors.  Given the conflicting and jumbled allegations, the Amended Complaint fails to adequately plead loss causation.

### 7.    Count I must be dismissed because Plaintiffs have not sufficiently alleged any scheme.

To sufficiently allege a scheme, it must "encompass[] conduct beyond those misrepresentations or omissions."  *WPP Lux. Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1057 (9th Cir. 2011).  "Conduct that is merely consistent with 'the normal course of business' and is not 'inherently deceptive' cannot form the basis of scheme liability."  *HBK Master Fund LP v. MaxLinear Inc.*, 2025 WL 20438, at *5 (S.D. Cal. Jan. 2, 2025).  Count I, purportedly for "scheme" liability, is

instead a disguised misrepresentation claim.    There are no allegations of manipulative acts.

A "manipulative act" is "virtually a term of art ... refer[ring] generally to practices, such as wash sales, matched orders, or rigged prices, that are intended to mislead investors by artificially affecting market activity." *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 129–30 (2d Cir. 2011) (*citing Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 199 (1976) and *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 476, (1977)).    "The gravamen of manipulation is deception of investors into believing that prices at which they purchase and sell securities are determined by the natural interplay of supply and demand." *Id.*   To determine whether activity falls outside that "natural interplay," "'courts generally ask whether a transaction sends a false pricing signal to the market.'" *Id.*   To succeed, manipulative schemes must usually remain undisclosed to the public. *See Santa Fe*, 430 U.S. at 477.

Plaintiffs do not – and cannot – argue that any of the individual approvals or splits that comprise the alleged scheme were not fully disclosed.[9]   The allegations are simply that the transactions occurred before other alleged misrepresentations. The terms were disclosed to the public and approved by shareholder vote, and Mullen investors were fully on notice that shares would be issued subject leading to dilution; indeed, Mullen specifically disclosed the risk of dilution. *See, e.g.,* ECF No. 76-2.    And these financing transactions, necessary for the survival of the company, were simply part of the normal course of business.[10]   More plausible is

---

[9] Plaintiffs do not dispute that even the first reverse split within the class period was ultimately disclosed in advance of the occurrence.

[10] Mullen's financing, described as "toxic" by Plaintiffs, is a form of lending "to microcap companies often struggling to obtain capital.  A toxic lender provides financing in the form of convertible debt – that is, debt that can be converted into common stock, almost always at a discount to market price.  The lender then converts and sells in large volumes, typically liquidating only a fraction of its debt holdings at a time to ensure that an entire tranche is sold before the next is converted at a discount to the new, still lower price.  The influx of shares causes prices to plummet, the share dilution drives good-faith investors out of the market, and the issuing microcap company, or 'issuer,' can no longer access legitimate financing, a fact that may be the death knell of its business operations. … **Although not illegal**, this behavior is disfavored by issuers, investors, and self-regulatory organizations."

that Defendants would effect reverse splits if the stock price remained above $1.00.

The Amended Complaint likewise does not allege any specific facts raising a plausible inference that Defendants knew or intended either (a) that the parties would undertake the number and scope of transactions they ultimately did, or (b) that the transactions would have the cumulative effect on Mullen's value that they ultimately did. Without more, Plaintiffs' claim is essentially that the Defendants' failure to disclose at the outset the alleged true purpose that they were undertaking a manipulative scheme transformed their transactions into a manipulative scheme. Like in litigation involving Top Ships, Inc., Plaintiffs' claim amounts to circular reasoning, such that Plaintiffs' allegations of a manipulative act are fatally conclusory. *See Brady v. Top Ships, Inc.*, 2019 WL 3553999 (E.D.N.Y. Aug. 5, 2019), at *1, *aff'd, Onel v. Top Ships, Inc.*, 806 F. App'x 64 (2d Cir. 2020) (affirming dismissal of a 10(b) class action alleging a scheme claim involving reverse stock splits and "death spiral financing").

A claim for market manipulation cannot be maintained where the essential details of the transactions were disclosed. In *Silverberg v. DryShips, Inc.*, the court explained succinctly:

> Sure, reverse stock splits can be seen as "manipulative" in that they raise the price of the shares, at least on a book value basis, without changing the value of the company. But, so long as the reason for the split is disclosed and investors have the option of voting against or selling before (or probably right after) the split, no one is being fooled. There is no false signal. In the most frequent reverse split situation, investors know that the company is in deep, deep trouble and on the verge of being delisted, and the purpose of the reverse stock split is to buy time to get new financing or implement new business plans. Armed with full disclosure, the investors can make the choice of either bailing before the split or riding it out to see if the company's refinancing plan works.

*SEC v. Almagarby*, 92 F.4th 1306, 1312 (11th Cir. 2024) (citation omitted, emphasis added).

2024 WL 4450793, at *5 (E.D.N.Y. Oct. 9, 2024) (granting motion to dismiss).

The Second Circuit's decision in *ATSI Communications, Inv. v. Shaar Fund, Ltd.* is also instructive. 493 F.3d 87 (2d Cir. 2007). In affirming dismissal of the claims, the court noted that "[a] strong inference of scienter is not raised by alleging that a legitimate investment vehicle, such as the convertible preferred stock at issue here, creates an opportunity for profit through manipulation. These circumstances are present for any investor in floorless convertibles." *Id.* at 104.

For all the same reasons as Count II, as well as the failure to plead any manipulative act, Plaintiffs' Count I for scheme liability also fails.

### 8.    The Section 20(a) claim fails.

Because the Section 10(b) and Rule 10b-5 claims fail, the Section 20(a) claim should also be dismissed. *Zucco*, 552 F.3d at 990 ("Section 20(a) claims may be dismissed summarily . . . if a plaintiff fails to adequately plead a primary violation of section 10(b).").

Further the Amended Complaint asserts a Section 20(a) claim solely based on status as executives, which is insufficient to show control over allegedly fraudulent statements. Indeed, "[t]he fact that a person is a CEO or other high-ranking officer within a company does not create a presumption that he or she is a controlling person." *Katz v. China Century Dragon Media, Inc*., 2011 WL 6047093, at *2 (C.D. Cal. Nov. 30, 2011) (citation and internal quotation marks omitted). Yet, for example, Plaintiffs in conclusory fashion allege that New was a control person merely because he had "control and authority as [a] senior officer[]…." and "[b]y reason of [his] senior management position[] and/or being director[] of Mullen." Am. Compl. at ¶¶ 260-61.

**C.    The Amended Complaint cannot be cured.**

Any attempt to cure the gross deficiencies in the Amended Complaint would be futile.  Dismissal without leave to amend is proper if the complaint cannot be saved by further amendment.  *See Kendall v. Visa U.S.A., Inc.,* 518 F.3d 1042, 1051 (9th Cir. 2008).  Plaintiffs have had the opportunity to amend, yet their Amended Complaint is plagued with fatal flaws: the statements were true, forward-looking, and accompanied by meaningful, cautionary language.  Plaintiffs have not and cannot sufficiently allege scienter or a causal connection to any public statement.  Finally, Plaintiffs cannot plead a cause of action under Section 20(a), because there is no underlying securities violation.

## IV.    <u>CONCLUSION</u>

For the reasons set forth herein, Plaintiffs' Amended Complaint should be entirely dismissed, with prejudice.

DATED:  September 30, 2025        **KING & SPALDING LLP**

By: */s/ Jenny Pelaez*
JENNY PELAEZ
BRIAN P. MILLER
SAMANTHA J. KAVANAUGH
ROSS E. LINZER

Attorneys for Defendants Mullen Automotive, Inc. n/k/a Bollinger Innovations, Inc., David Michery, and Jonathan New

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Defendants Mullen Automotive, Inc. n/k/a Bollinger Innovations, Inc., David Michery, and Jonathan New certifies that this brief contains 6,976 words, which complies with the word limit of L.R. 11-6.1.


*/s/Jenny Pelaez*
Jenny Pelaez

DEFENDANTS' MOTION TO DISMISS