1  POMERANTZ LLP
2  Jennifer Pafiti (SBN 282790)
   1100 Glendon Avenue, 15th Floor
3  Los Angeles, CA 90024
   Telephone: (310) 405-7190
4  jpafiti@pomlaw.com
5
6  *Co-Lead Counsel for Lead Plaintiffs and
   the Proposed Class*
7
8  [Additional Counsel on Signature Page]

9         **UNITED STATES DISTRICT COURT**
10        **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 11 | Case No. 2:25-cv-01187-DMG-AGR |
| 12  IN RE MULLEN AUTOMOTIVE, INC. SECURITIES LITIGATION II | <u>CLASS ACTION</u> |
| 13 | |
| 14 | MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT |
| 15 | |
| 16 | |
| 17 | Honorable Dolly M. Gee |
| 18 | Date: March 6, 2026 |
| 19 | Time: 9:30 a.m. |
| 20 | Courtroom No.: 8C |
| 21 | First Amended Complaint Filed: |
| 22 | July 30, 2025 |

23
24
25
26
27
28

---
MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST
AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS..................................................................................i

TABLE OF AUTHORITIES .......................................................................iii

I.  INTRODUCTION.............................................................................1

II.  STATEMENT OF FACTS.................................................................2

A. Mullen's Operations and Defendants' Scheme to Keep the Company Functioning as Defendants' Slush Fund ................................2

B. Defendants Mislead Investors about Plans to Reverse Split................3

C. Defendants Misrepresent Mullen's Partnership with Hardge and His Fictional Battery Technology.................................................4

D. Investors Learn Hardge's Battery Technology is a Scam....................4

E. Defendants Promote Illusory Volt Mobility Deal...............................5

F. Investors Learn the Truth about the Volt Mobility Deal .....................5

III.  ARGUMENT ...................................................................................5

A. Legal Standard .................................................................................5

B. Plaintiffs Adequately Allege Violations of Rule 10b-5.......................6

1.  False and Misleading Statements about Defendants' Reverse Stock Splits.............................................................................7

2.  False and Misleading Statements about the EVT Partnership.........8

3.  False and Misleading Statements about Volt Mobility...................9

4.  Defendants' Statements Are Not Forward-Looking.....................10

5.  Defendants' Statements Were Not "Puffery" ..............................12

6.  All Statements are attributed to Defendants ...............................13

7.  Plaintiffs Plead a Strong Inference of Scienter............................13

8.  Plaintiffs Adequately Allege Loss Causation ..............................18

- i -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

C.  Plaintiffs Have Properly Pleaded §20(a) Violations ........................... 19

D.  Plaintiffs Have Alleged Scheme Liability .......................................... 20

IV.    CONCLUSION ......................................................................................... 22

MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST
AMENDED COMPLAINT

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*ATSI Communications, Inv. v. Shaar Fund, Ltd.*,
5
    493 F.3d 87 (2d Cir. 2007) ...................................................................... 22

6

*Autotel v. Nev. Bell Tel. Co.*,
7
    697 F.3d 846 (9th Cir. 2012) .................................................................... 22

8

*Bao v. Solarcity Corp.*,
9
    No. 14-cv-01435-BLF, 2016 WL 54133
10
    (N.D. Cal. Jan. 5, 2016) ........................................................................... 15

11
*Baron v. Hyrecar Inc.*,
    No. 2:21-cv-06918-FWS-JC, 2022 WL 17413562
12
    (C.D. Cal. Dec. 5, 2022) ........................................................................... 15

13

*Berson v. Applied Signal Tech., Inc.*,
14
    527 F.3d 982 (9th Cir. 2008) ...................................................................... 6

15

*Bielousov v. GoPro, Inc.*,
16
    No. 16-cv-06654-CW, 2017 WL 3168522
17
    (N.D. Cal. July 26, 2017) .......................................................................... 17

18

*Borteanu v. Nikola Corp.*,
19
    No. CV-20-01797-PHX-SPL, 2023 WL 11017679
20
    (D. Ariz. Dec. 8, 2023) ......................................................................... 20, 21

21

*Brady v. Top Ships, Inc.*,
22
    17-cv-4987 (BMC), 2019 WL 3553999
23
    (E.D.N.Y. Aug. 5, 2019).......................................................................... 22

24

*Carlucci v. Han*,
    907 F.Supp.2d 709 (E.D. Va. 2012) ........................................................ 18
25

*City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*,
26
    527 F.Supp.3d 1151 (N.D. Cal. 2021)...................................................... 14

27

28

- iii -

*Courter v. CytoDyn, Inc.*,
    788 F.Supp.3d 1150 (W.D. Wash. 2025) ............................................................21

*Craig Frazier Design, Inc. v. Zimmerman Agency LLC*,
    No. C 10–1094 SBA, 2010 WL 3790656
    (N.D. Cal. Sep. 27, 2010) ........................................................................................6

*Cullen v. Ryvyl Inc.*,
    No. 3:23-cv-0185-GPC-SBC, 2024 WL 4536471
    (S.D. Cal. Oct. 21, 2024) ......................................................................................19

*Dura Pharmaceuticals, Inc. v. Broudo*,
    544 U.S. 336 (2005)...............................................................................................18

*E. Ohman J v. NVIDIA Corp.*,
    81 F.4th 918 (9th Cir. 2023) ..................................................................13, 15, 16

*Farrar v. Workhorse Grp., Inc.*,
    CV 21-02072-CJC (PVCx), 2021 WL 5768479
    (C.D. Cal. Dec. 2, 2021) .......................................................................................10

*Freudenberg v. E*Trade Fin. Corp.*,
    712 F.Supp.2d 171 (S.D.N.Y. 2010) ....................................................................18

*Garcia v. Hetong Guo*,
    No. CV–15–1862–MWF–MRWx, 2016 WL 102213
    (C.D. Cal. Jan. 7, 2016) ..........................................................................................9

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*,
    63 F.4th 747 (9th Cir. 2023) ..........................................................................*passim*

*Green v. Maison Sols. Inc.*,
    No. 2:24-cv-00063-SPG-KS, 2025 WL 1009121
    (C.D. Cal. Mar. 31, 2025).....................................................................................10

*Hampton v. Aqua Metals, Inc.*,
    No. 17-cv-07142-HSG, 2020 WL 6710096
    (N.D. Cal. Nov. 16, 2020) .....................................................................................12

MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST
AMENDED COMPLAINT

*Indiana Pub. Ret. Sys. v. Rivian Auto., Inc.*,
    No. 2:24-cv-4566-CBM-JPR, 2025 WL 2426714
    (C.D. Cal. Aug. 20, 2025)........................................................................10, 11, 12

*In re Alphabet, Inc. Sec. Litig.*,
    1 F.4th 687 (9th Cir. 2021) ...................................................................16

*In re Am. Apparel, Inc. S'holder Litig.*,
    855 F.Supp.2d 1043 (C.D. Cal. 2012) ...................................................7

*In re Amgen Inc. Sec. Litig.*,
    544 F.Supp.2d 1009 (C.D. Cal. 2008) ...................................................10

*In re Atossa Genetics Inc. Sec. Litig.*,
    868 F.3d 784 (9th Cir. 2017) .................................................................6

*In re Bed Bath & Beyond Corp. Sec. Litig.*,
    687 F.Supp.3d 1 (D.D.C. 2023) ............................................................20

*In re BioMarin Pharm. Inc. Sec. Litig.*,
    No. 3:20-cv-06719-WHO, 2022 WL 597037
    (N.D. Cal. Feb. 28, 2022) .....................................................................11

*In re BofI Holding, Inc. Sec. Litig.*,
    977 F.3d 781 (9th Cir. 2020) .........................................................18, 19

*In re ChinaCast Educ. Corp. Sec. Litig.*,
    809 F.3d 471 (9th Cir. 2015) .................................................................13

*In re Cutera Sec. Litig.*,
    610 F.3d 1103 (9th Cir. 2010) ...............................................................12

*In re Downey Sec. Litig.*,
    No. CV 08–3261–JFW (RZx), 2009 WL 736802
    (C.D. Cal. Mar. 18, 2009).....................................................................12

*In re ECOtality, Inc. Sec. Litig.*,
    No. 13–03791–SC, 2014 WL 4634280
    (N.D. Cal. Sept. 16, 2014) ....................................................................11

- v -

MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST
AMENDED COMPLAINT

*In re Galena Biopharma, Inc. Sec. Litig.*,
  117 F.Supp.3d 1145 (D. Or. 2015) ...................................................21

*In re Gilead Scis. Sec. Litig.*,
  536 F.3d 1049 (9th Cir. 2008) ..............................................6, 19

*In re Hansen Nat. Corp. Sec. Litig.*,
  527 F.Supp.2d 1142 (C.D. Cal. 2007) ...............................................17

*In re Immune Response Sec. Litig.*,
  375 F.Supp.2d 983 (S.D. Cal. 2005) .................................................10

*In re Int'l Rectifier Corp. Sec. Litig.*,
  No. CV 07–02544–JFW (VBKx), 2008 WL 4555794
  (C.D. Cal. May 23, 2008) ...............................................................19

*In re Leapfrog Enter. Sec. Litig.*,
  237 F.Supp.3d 943 (N.D. Cal. 2017).................................................7

*In re MannKind Sec. Actions*,
  835 F.Supp.2d 797 (C.D. Cal. 2011) .........................................7, 12

*In re Mullen Auto. Sec. Litig.* ("*Mullen I*"),
  No. CV 22-3026-DMG (AGRx), 2023 WL 8125447
  (C.D. Cal. Sept. 28, 2023) ...................................................*passim*

*In re Nuvelo, Inc. Sec. Litig.*,
  668 F.Supp.2d 1217 (N.D. Cal. 2009)...............................................12

*In re Paysign, Inc. Sec. Litig.*,
  No. 2:20-cv-00553-GMN-DJA, 2023 WL 1868476
  (D. Nev. Feb. 9, 2023) .......................................................................9

*In re Petrobras Sec. Litig.*,
  116 F.Supp.3d 368 (S.D.N.Y. 2015) ................................................14

*In re Quality Sys., Inc. Sec. Litig*,
  865 F.3d 1130 (9th Cir. 2017).................................................10, 15, 16

MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST
AMENDED COMPLAINT

*In re QuantumScape Sec. Class Action Litig.*,
   580 F.Supp.3d 714 (N.D. Cal. 2022)...................................................................8, 11

*In re Questcor Sec. Litig.*,
   No. SA CV 12–01623 DMG (FMOx), 2013 WL 5486762
   (C.D. Cal. Oct. 1, 2013)......................................................................................16

*In re Rocket Fuel, Inc. Sec. Litig.*,
   No. 14-cv-3998-PJH, 2015 WL 9311921
   (N.D. Cal. Dec. 23, 2015).....................................................................................8

*In re SeeBeyond Techs. Corp. Sec. Litig.*,
   266 F.Supp.2d 1150 (C.D. Cal. 2003)................................................................17

*In re SVB Fin. Grp. Sec. Litig.*,
   No. 23-cv-01097-NW, 2025 WL 1676800
   (N.D. Cal. June 13, 2025)....................................................................................19

*In re VeriFone Holdings, Inc. Sec. Litig.*,
   704 F.3d 694 (9th Cir. 2012) ..............................................................................17

*In re Zillow Grp., Inc. Sec. Litig.*,
   No. C17-1387-JCC, 2019 WL 1755293
   (W.D. Wash. Apr. 19, 2019)................................................................................16

*Janus Cap. Grp., Inc. v. First Deriv. Traders*,
   564 U.S. 135 (2011)............................................................................................13

*Johnson v. Knapp*,
   CV 02–9262–DSF (PJW), 2009 WL 764521
   (C.D. Cal. Mar. 16, 2009)......................................................................................6

*Katz v. China Century Dragon Media, Inc.*,
   No. LA CV11–02769 JAK (SSx), 2011 WL 6047093
   (C.D. Cal. Nov. 30, 2011)....................................................................................20

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) ................................................................................6

- vii -

MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
  No. 2:15-cv-04003-ODW(MRWx), 2016 WL 6609210
  (C.D. Cal. May 10, 2016) ...................................................................7

*Kunzweiler v. Zero.Net, Inc.*,
  No. CIV.A.3:00–CV–2553–P, 2002 WL 1461732
  (N.D. Tex. July 3, 2002) ....................................................................9

*Lipton v. Pathogenesis Corp.*,
  284 F.3d 1027 (9th Cir. 2002) ...........................................................18

*Lorenzo v. S.E.C.*,
  587 U.S. 71 (2019)........................................................................20, 21

*Mallen v. Alphatec Holdings, Inc.*,
  861 F.Supp.2d 1111 (S.D. Cal. 2012) ...............................................11

*Matrixx Initiatives, Inc. v. Siracusano*,
  563 U.S. 27 (2011)...............................................................................5

*Middlesex Ret. Sys. v. Quest Software Inc.*,
  527 F.Supp.2d 1164 (C.D. Cal. 2007) ...............................................17

*Mulderrig v. Amyris, Inc.*,
  492 F.Supp.3d 999 (N.D. Cal. 2020)..................................................18

*Nutriband, Inc. v. Kalmar*,
  19-CV-2511 (NGG) (SJB), 2020 WL 4059657
  (E.D.N.Y. July 20, 2020).....................................................................9

*Or. Pub. Emps. Ret. Fund v. Apollo Grp., Inc.*,
  774 F.3d 598 (9th Cir. 2014) .............................................................12

*Osher v. JNI Corp.*,
  183 Fed. App'x. 604 (9th Cir. 2006)..................................................22

*Par Inv. Partners, L.P. v. Aruba Networks, Inc.*,
  681 Fed. App'x 618 (9th Cir. 2017) ..................................................12

MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST
AMENDED COMPLAINT

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
  759 F.3d 1051 (9th Cir. 2014) ................................................................15

*Reese v. Malone*,
  747 F.3d 557 (9th Cir. 2014) ..................................................................16

*Robb v. Fitbit Inc.*,
  216 F.Supp.3d 1017 (N.D. Cal. 2016)......................................................8

*Sayce v. Forescout Techs., Inc.*,
  No. 20-cv-00076-SI, 2021 WL 1146031
  (N.D. Cal. Mar. 25, 2021)......................................................................19

*Scheller v. Nutanix, Inc.*,
  No. 19-cv-01651-WHO, 2020 WL 5500422
  (N.D. Cal. Sept. 11, 2020)......................................................................14

*Schueneman v. Arena Pharms., Inc.*,
  840 F.3d 698 (9th Cir. 2016) ............................................................8, 13

*SEC v. Blackburn*,
  156 F.Supp.3d 778 (E.D. La. 2015) ........................................................18

*SEC v. Complete Bus. Sols. Grp., Inc.*,
  538 F.Supp.3d 1309 (S.D. Fla. 2021)........................................................9

*S.E.C. v. Curshen*,
  888 F.Supp.2d 1299 (S.D. Fla. 2012)......................................................21

*SEC v. Laura*,
  680 F.Supp.3d 204 (E.D.N.Y. June 28, 2023) ......................................21

*SEC v. Medallion Fin. Corp.*,
  No. 21-cv-11125 (LAK), 2024 WL 4227753
  (S.D.N.Y. Sept. 18, 2024)......................................................................20

*SEC v. OwnZones Media Network, Inc.*,
  No. CV 20-03108-CJC(JPRx), 2020 WL 13311398
  (C.D. Cal. Sept. 17, 2020) .....................................................................13

- ix -

MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

*SEC v. Patel*,
No. 24-cv-6405 (BMC), 2025 WL 1994550
(E.D.N.Y. July 17, 2025)..............................................................20, 21

*SEC v. Sugarman*,
No. 19cv5998, 2020 WL 5819848
(S.D.N.Y. Sept. 30, 2020).................................................................21

*SEC v. Wey*,
246 F.Supp.3d 894 (S.D.N.Y. 2017) ................................................14

*S. Ferry LP v. Killinger*,
542 F.3d 776 (9th Cir. 2008) .....................................................14, 16

*Shenwick v. Twitter, Inc.*,
282 F.Supp.3d 1115 (N.D. Cal. 2017)..............................................14

*Silverberg v. DryShips, Inc.*,
No. 17-cv-4547 (BMC), 2024 WL 4450793
(E.D.N.Y. Oct. 9, 2024)....................................................................22

*Steamship Trade Ass'n of Baltimore-Int'l Longshoreman's Ass'n Pension Fund v. Olo Inc.*,
No. 22-cv-8228 (JSR), 2023 WL 8287681
(S.D.N.Y. Nov. 30, 2023)....................................................................9

*Strasburger v. Blackburne & Sons Realty Capital Corp.*,
No. No.: CV 20-00220-CJC(JCx), 2020 WL 6128069
(C.D. Cal. Apr. 22, 2020) ...................................................................6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)....................................................................13, 18

*Tripp v. Indymac Fin., Inc.*,
No. CV07-1635-GW(VBKx), 2007 WL 4591930
(C.D. Cal. Nov. 29, 2007)..................................................................17

*Turocy v. El Pollo Loco Holdings, Inc.*,
No. SACV 15-1343-DOC (KESx), 2017 WL 3328543
(C.D. Cal. Aug. 4, 2017) ...................................................................14

- x -

*United Ass'n Nat'l Pension Fund v. Carvana Co.*,
    759 F.Supp.3d 926 (D. Ariz. Dec. 2024)...........................................................17

**Statutes and Rules**

15 U.S.C. §78u-4(b)(1)(B)..................................................................................6, 7

17 C.F.R. §240.10b-5.............................................................................................20

Fed. R. Civ. P. 9(b) .......................................................................................*passim*

Fed. R. Civ. P. 12(b)(6) ......................................................................................5, 6

Private Securities Litigation Reform Act of 1995 .................................................1

Section 10(b) of the Exchange Act of 1934.........................................................19

MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST
AMENDED COMPLAINT

Co-Lead Plaintiffs Muhammad Jafri and Teeluck Persad (collectively, "Plaintiffs"), respectfully submit this opposition to Defendants' motion to dismiss the Complaint.[1]

## I.    INTRODUCTION

Mullen portrayed itself as an EV company but was primarily a stock promoter. It issued false press releases to boost and maintain its stock price, sold predatory convertible notes to raise money used for lavish executive compensation, which necessarily devastated the common stock price when converted and sold, and reverse split its stock whenever the scheme drove shares to a few pennies per share. Defendants misrepresented Mullen's plans to effect reverse stock splits and Mullen's partnership with Lawrence Hardge ("Hardge"), Global EV Technology, Inc. and EV Technologies LLC (collectively, "EVT"), including the fictional battery technology at the heart of the partnership; and concealed from their misleading Class Period statements Hardge's criminal history and fatal impediments to the deals they touted to investors for Saudi Arabia, Washington D.C., and the UAE.

Defendants raise no pleading deficiency. Plaintiffs pled each misrepresentation and omission in detail and explained why each was false. ¶¶108–13, 119–24, 126–27, 132–37, 165–74, 179, 181, 183–84, 186–87. Notably, many echo those found sufficient in *In re Mullen Auto. Sec. Litig.* ("*Mullen I*"), 2023 WL 8125447 (C.D. Cal. Sept. 28, 2023). Plaintiffs also allege in detail the additional deceptive conduct rounding out Defendants' scheme. ¶¶73–99, 240. These particularized allegations easily meet the pleading standards under the PSLRA and Rule 9(b).

---

[1] Defendants are, collectively, Mullen Automotive, Inc. ("Mullen" or the "Company"), David Michery ("Michery"), and Jonathan New ("New"). All "¶__" references are to the First Amended Complaint for Violations of the Federal Securities Laws (the "Complaint") (ECF 63). All "DM" references refer to the Memorandum of Law in Support of Defendants' Motion to Dismiss (ECF 77). All emphasis is added and internal citations omitted unless otherwise noted.

MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS FIRST
AMENDED COMPLAINT

Defendants' challenges to scienter and loss causation also fail. Well-pled factual allegations demonstrate that Defendants had actual knowledge of, and access to, information contradicting their public statements, which involved Mullen's core operations. They had motive as well: the executives used the scheme to furnish their lavish lifestyles. Finally, Plaintiffs allege that Mullen's share price dropped promptly with the corrective disclosures. That is all the law requires.

Accordingly, Defendants' motion should be denied.

## II.    STATEMENT OF FACTS

### A.    Mullen's Operations and Defendants' Scheme to Keep the Company Functioning as Defendants' Slush Fund

Though ostensibly an EV company, Mullen never produced meaningful sales and only generates cash by selling convertible debt and other securities. ¶¶25–34, 88. In reality, Mullen operates as a slush fund for its founder, Michery, who took more than $50 million in compensation during the Class Period (and New millions more), and misappropriated Company resources for his private benefit. ¶¶53–72.

The serial capital raises required Mullen to retain its NASDAQ listing, which had a $1 floor price requirement. ¶¶35–44, 73–99. To maintain this price, Defendants engaged in both standard misrepresentations and omissions, and additional deceptive conduct. *Id. First*, Defendants issued misleading statements to pump up Mullen's share price. ¶¶74, 108–13, 119–24, 126–27, 132–37, 165–74, 179, 181, 183–84, 186–87. Then, Defendants sold convertible notes, which were routinely exercised into common shares and dumped by the note investors, pressuring the share price downward. ¶¶79–87. Shares also fell when Defendants' statements were proven false. ¶¶91–93. Finally, Defendants reverse-split Mullen's stock, restarting the cycle. ¶¶91–99. Below is an outline of Defendants' scheme:

MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS FIRST
AMENDED COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16



17  **B.    Defendants Mislead Investors about Plans to Reverse Split**

18        On November 14, 2022, Defendants ensured their ability to reverse split even

19  against the consent of common shareholders, by creating a Series AA Preferred Stock

20  carrying 1,300,000,000 votes sold to Michery for $25,000. ¶100. On January 19, 2023,

21  Michery used that leverage to force authorization of a reverse split, ¶¶102, 105–06, but

22  falsely reassured investors and NASDAQ that Mullen had "no plans at the current time

23  to effect a reverse stock split" and would not reverse split before September 6, 2023,

24  ¶¶108, 110, 112. On that basis, NASDAQ granted Mullen a 180-day reprieve from

25  delisting. ¶115. In fact, further splits were both contemplated and anticipated. ¶¶108–

26  15.

27

28

MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS FIRST
AMENDED COMPLAINT

**C.    Defendants Misrepresent Mullen's Partnership with Hardge and His Fictional Battery Technology**

In April 2023, the Defendants announced that the Company had partnered with Hardge—a convicted felon—and EVT to create a joint venture 51% owned by Mullen. ¶¶118–27. They misrepresented that (i) the partnership had "known verified technology for improving existing vehicle performance and extending battery range[,]"; (ii) Mullen engineers had confirmed the technical claims, finding that the technology increased battery range by 60% to 75%; (iii) the nature of Hardge's criminal record, falsely stating his state law conviction had been expunged; and (iv) they had a $10 billion contract with Saudi Arabia for the technology. *Id*. In truth, no such technology existed, Mullen's engineers had never confirmed its efficacy, no contract with Saudi Arabia existed, and Hardge's *felony* conviction was never expunged. *Id*.

On May 15, 2023, after a reverse stock split, Defendants continued to pump Mullen shares by misrepresenting the fictional battery technology, fabricating test results, and claiming a $680,000 deal with the Washington D.C. government for the technology that did not exist. ¶¶132–37. Mullen then registered and authorized the issuance of millions of shares to the convertible note investors for them to dump upon conversion. ¶¶138–39.

**D.    Investors Learn Hardge's Battery Technology is a Scam**

Between June and July 2023, the truth about Mullen's fictional battery technology dribbled out. Investors learned that: (a) there was no $10 billion Saudi Arabian deal (¶¶140–41); (b) Mullen had never independently confirmed the fictional battery technology (*Id.*); (c) the joint venture was terminated because it lacked value (¶¶145–46); (d) the battery technology was "untested and practically impossible" (¶¶147–49); (e) Hardge was actually convicted of an unexpunged felony (*Id.*); and (f) Washington D.C. cancelled Mullen's contract because the technology didn't exist (¶151). Mullen's share price dropped dramatically upon each revelation. ¶¶142–52.

- 4 -

MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS FIRST AMENDED COMPLAINT

**E.    Defendants Promote Illusory Volt Mobility Deal**

The revelation of the sham battery technology eviscerated Mullen's share price, sending it well below NASDAQ's $1.00 requirement. Accordingly, Defendants effected three reverse stock splits, devastating common shareholders but allowing Mullen to sell more convertible notes. ¶¶161–62.

No longer able to tout the fictional battery, Defendants pivoted on August 26, 2024 to misrepresenting a purported $210 million agreement with Volt Mobility (the "Volt Mobility Deal") for electric vehicles to be sold in the UAE, and Michery repeatedly tweeted promoting the deal. ¶¶165–75. On September 20, 2024, Mullen issued a press release touting that Mullen had delivered four EVs to Volt Mobility, omitting that the EVs were shipped for marketing purposes and could not be legally sold in the UAE. ¶¶179–80. Defendants continued to tout the deal in 2024 and 2025, omitting that the vehicles were not compliant with UAE standards and could not be sold there. ¶¶183–87.

**F.    Investors Learn the Truth about the Volt Mobility Deal**

On March 20, 2025, the known but concealed risks to the Volt Mobility Deal materialized when Mullen admitted that the deal fizzled without the sale of a single vehicle. ¶192. On this news, Mullen's share price dropped 30.6% over the next two days. ¶193. Still, in line with their scheme, Defendants subsequently entered into numerous convertible securities sales, followed by reverse stock splits. ¶¶195–99. News of the stock splits caused Mullen's share price to drop 12.1% and 41.7%, respectively. *Id.*

**III.    ARGUMENT**

**A.    Legal Standard**

As the United States Supreme Court instructs, securities fraud plaintiffs "need only allege enough facts to state a claim for relief that is plausible on its face." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 45 n.12 (2011). On a Rule 12(b)(6) motion,

the court "accept[s] the Plaintiffs' allegations as true and construe[s] them in the light most favorable to Plaintiffs." *In re Atossa Genetics Inc. Sec. Litig.*, 868 F.3d 784, 793 (9th Cir. 2017).[2] "[T]he purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to decide its merits." *Craig Frazier Design, Inc. v. Zimmerman Agency LLC*, 2010 WL 3790656, at *6 (N.D. Cal. Sep. 27, 2010). "The issue on a motion to dismiss for failure to state a claim is not whether the claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims asserted." *Strasburger v. Blackburne & Sons Realty Capital Corp.*, 2020 WL 6128069, at *2 (C.D. Cal. Apr. 22, 2020); *see also In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008) (a district court construing a Rule 12(b)(6) motion "is not sitting as a trier of fact"). Rather, "so long as the plaintiff alleges facts to support a theory that is not facially implausible, the court's skepticism is best reserved for later stages of the proceedings." *Gilead*, 536 F.3d at 1057. The Court's analysis is confined to the Complaint and any materials that are the proper subject of judicial notice or incorporation by reference. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). Critically, defendants cannot insert their own version of the facts in place of a complaint's particularized allegations. *See Johnson v. Knapp*, 2009 WL 764521, at *4 (C.D. Cal. Mar. 16, 2009).

## B.  Plaintiffs Adequately Allege Violations of Rule 10b-5

A statement giving a reasonable investor the "impression of a state of affairs that differs in a material way from the one that actually exists" is misleading and actionable. *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985 (9th Cir. 2008). Further, omitting material facts that render a statement misleading is actionable. *Khoja*, 899 F.3d at 1008–09. Here, Plaintiffs adequately plead falsity because they "specify each statement alleged to have been misleading, [and the

---

[2] All internal citations and quotations omitted, unless stated otherwise, and all emphasis is added.

MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS FIRST AMENDED COMPLAINT

reason or reasons why the statement is misleading." 15 U.S.C. §78u-4(b)(1)(B).

For each statement or omission, Plaintiffs allege who made it, when, where, and how it was disseminated, and why it was false or misleading when made. ¶¶108–13, 119–24, 126–27, 132–37, 165–74, 179, 181, 183–84, 186–87. Such details satisfy the PSLRA's particularity requirements. *In re Leapfrog Enter. Sec. Litig.*, 237 F.Supp.3d 943, 950 (N.D. Cal. 2017).

### 1. False and Misleading Statements about Defendants' Reverse Stock Splits

Defendants misrepresented to investors that they had no plans to effect a reverse stock split and would not do so prior to September 2023. In truth, they always planned to effect reverse stock splits as needed to maintain the bid price central to their NASDAQ listing. ¶¶108–13. Claiming to do one thing while anticipating or planning another action is a classic form of misrepresentation. *See Mullen I*, 2023 WL 8125447, at *7 (specific assertions of then-present facts while in possession of contradictory knowledge were materially misleading); *In re Am. Apparel, Inc. S'holder Litig.*, 855 F.Supp.2d 1043, 1068–69 (C.D. Cal. 2012) (finding falsity where subsequent events were so inconsistent with representations that it was unreasonable to presume they were true when made).

This was not fraud-by-hindsight. "Fraud is almost always detected after the fact[.]" *In re MannKind Sec. Actions*, 835 F.Supp.2d 797, 809–10 (C.D. Cal. 2011). Falsity relates to whether statements are false or misleading when made, not to the timing of the disclosure. *Id*. Plaintiffs allege that the statements were misleading *when made* because Defendants always anticipated reverse stock splits to meet NASDAQ listing requirements. ¶¶108–113, 115. *See Knox v. Yingli Green Energy Holding Co. Ltd.*, 2016 WL 6609210, at *8 (C.D. Cal. May 10, 2016) (fraud-by-hindsight inapplicable when statements pled as false when made).

### 2.    False and Misleading Statements about the EVT Partnership

Defendants also made materially misleading statements and omissions regarding Mullen's partnership with EVT and Hardge. Defendants told investors that Mullen had acquired "known verified technology" increasing EV battery efficiency by 60% to 75%, which Mullen's engineers "correlate[ed] … with testing[.]" ¶¶119–24, 126–27, 132–36. In truth, no such technology existed, and Defendants misrepresented their independent confirmation. *Id*.; ¶¶140–53. This Court held in *Mullen I* that claiming to possess technology that does not actually exist is actionable. 2023 WL 8125447, at *7–8; *see also In re QuantumScape Sec. Class Action Litig*., 580 F.Supp.3d 714, 735 (N.D. Cal. 2022) (falsity alleged for misrepresentations regarding EV battery testing); *Robb v. Fitbit Inc.*, 216 F.Supp.3d 1017, 1029–30 (N.D. Cal. 2016) (falsity alleged for misrepresentations regarding a product's capabilities); *In re Rocket Fuel, Inc. Sec. Litig.*, 2015 WL 9311921, at *6 (N.D. Cal. Dec. 23, 2015) (similar).[3]

Defendants also made actionable omissions. ¶¶126, 134, 136. Once a defendant chooses to "tout positive information to the market, they are bound to do so in a manner that wouldn't mislead investors, including by disclosing adverse information that cuts against the positive information." *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 706 (9th Cir. 2016). By touting their partnership with EVT and deals in Saudi Arabia and Washington D.C., but omitting that the technology underlying these deals was fictional, Defendants painted a misleading picture. *Id*. at 705–06; *see Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 779 (9th Cir. 2023) (omitting information that undermined the success of a business deal was actionable); *Mullen I*, 2023 WL 8125447, at *8 (similar).

---

[3] In *Mullen I*, this Court dismissed claims related to an April press release because the plaintiff failed to identify what parts of that press release were false. *Id*. Conversely, Plaintiffs outline exactly how each of Defendants' statements are false and misleading. *Supra* at Section B.

- 8 -

Finally, Defendants made an actionable misrepresentation about Hardge's criminal history, claiming that he only was convicted of an expunged state crime, when he was actually an unexpunged felon. ¶¶120–21; *SEC v. Complete Bus. Sols. Grp., Inc.*, 538 F.Supp.3d 1309, 1331–32 (S.D. Fla. 2021) (misleading investors about defendant's criminal history was actionable); *Nutriband, Inc. v. Kalmar*, 2020 WL 4059657, at *10 (E.D.N.Y. July 20, 2020) (similar); *Kunzweiler v. Zero.Net, Inc.*, 2002 WL 1461732, at *11 (N.D. Tex. July 3, 2002) (similar). Defendants incorrectly claim the truth was known, DM 11. A plain reading of the Complaint shows that Defendants *never* disclosed Hardge's true criminal history to investors. ¶¶120–21.

Nor does Defendants' unsupported argument that they relied on Hardge's description of the technology immunize their own misstatements. DM 11–12. First, Defendants were responsible for reasonably verifying the information they touted to investors. *See In re Paysign, Inc. Sec. Litig.*, 2023 WL 1868476, at *5 (D. Nev. Feb. 9, 2023). Second, Defendants did far more than relay Hardge's falsehoods; they affirmatively misrepresented that they independently verified the fictional battery technology. ¶¶122–23, 132. Third, any unverified reliance on the boasts of a known criminal cannot be characterized as reasonable. At any rate, Defendants' assertions raise factual disputes and contest witness credibility, issues uniquely reserved for the jury. *See Garcia v. Hetong Guo*, 2016 WL 102213, at *6 (C.D. Cal. Jan. 7, 2016); *Steamship Trade Ass'n of Baltimore-Int'l Longshoreman's Ass'n Pension Fund v. Olo Inc.*, 2023 WL 8287681, at *11 (S.D.N.Y. Nov. 30, 2023).

### 3.    False and Misleading Statements about Volt Mobility

Defendants misled investors about the Volt Mobility Deal by omitting that Mullen's EVs did not meet the UAE's homologation standards, could not be legally sold in the UAE, and that it would take a year and $25 million to attempt to homologate the vehicles. ¶¶165–74, 179–81, 183–84. Defendants' failure to disclose "facts tending to seriously undermine their ability to secure [the] contract" is a classic

misrepresentation. *Farrar v. Workhorse Grp., Inc.*, 2021 WL 5768479, at *3–4 (C.D. Cal. Dec. 2, 2021). In *Mullen I*, Defendants made similar actionable omissions by omitting from public statements a "large sales order" the fact that Defendants could not fulfill the order and "did not have regulatory authorization to begin selling the vans." *Mullen I*, 2023 WL 8125447, at *8. As with Defendants' other misstatements here and in *Mullen I*, "Plaintiffs sufficiently plead falsity . . . because the statements created an impression of a state of affairs that differed in a material way from what actually existed." *Indiana Pub. Ret. Sys. v. Rivian Auto., Inc.*, 2025 WL 2426714, at *2 (C.D. Cal. Aug. 20, 2025) (collecting cases).

Defendants mistakenly claim that disclosing the agreement itself immunizes them from liability when mischaracterizing the agreement. DM 12. Not so. The referenced agreement says nothing about the fact that Mullen's EVs were not homologated for the UAE, nor the time and expense that it would take to make them so. *See, generally*, ECF 76-22. It never reveals the truth at all, let alone in a manner "sufficient to effectively counterbalance any misleading impression created by [Defendants'] one-sided representations." *In re Immune Response Sec. Litig.*, 375 F.Supp.2d 983, 1036 (S.D. Cal. 2005). Moreover, this "truth-on-the-market" defense raises factual issues inappropriate for the pleading stage. *See Green v. Maison Sols. Inc.*, 2025 WL 1009121, at *7 (C.D. Cal. Mar. 31, 2025); *In re Amgen Inc. Sec. Litig.*, 544 F.Supp.2d 1009, 1025 (C.D. Cal. 2008).

### 4.    Defendants' Statements Are Not Forward-Looking

The PSLRA's safe harbor did not provide Defendants a license to mislead investors or protect them when they did so. The safe harbor does not apply to statements about present or historical fact, or even mixed statements that contain both forward-looking and current or historical components. *See, e.g.*, *In re Quality Sys., Inc. Sec. Litig*, 865 F.3d 1130, 1148 (9th Cir. 2017). That is true even if some element relates to a future goal or event. *Id.; Forescout*, 63 F.4th at 774 (similar).

Many of the challenged statements here are based in present or historical fact, taking them entirely outside the safe harbor. *See* ¶¶108, 110, 112, 120, 122,132, 136, 179, 186. These statements all "contain[ed] an express or implied concrete assertion concerning a specific current or past fact[.]" *Mullen I*, 2023 WL 8125447, at *11. Moreover, other challenged statements involve omissions of present fact. ¶¶126, 134, 136, 165–74, 179–81, 183–84. Those are also unprotected. *Mallen v. Alphatec Holdings, Inc.*, 861 F.Supp.2d 1111, 1126 (S.D. Cal. 2012).

Further, *all* of Defendants' statements failed to include meaningful accompanying cautionary language that the safe harbor requires. *See Mullen I*, 2023 WL 8125447, at *11. For safe harbor protection, such cautionary language must be so powerful that the "risk of **real deception drops to nil.**" *Rivian*, 2025 WL 2426714, at *4; *In re BioMarin Pharm. Inc. Sec. Litig.*, 2022 WL 597037, at *3–6 & n.1 (N.D. Cal. Feb. 28, 2022) (same); *QuantumScape*, 580 F.Supp.3d at 734 (same); *see also Forescout*, 63 F.4th at 779 (cautionary language insufficient when risks are framed as hypothetical, but defendants had information that risk was likely to materialize). Here, Defendants' boilerplate cautionary language failed to address *any* of the specific risks that Defendants were concealing from investors. DM 6–8, 12–13. The Proxy Statement never disclosed that Defendants had already determined to effect a reverse stock split as soon as Mullen received an extension from NASDAQ. *See* ECF 76-17. The Letter of Agreement never discloses that the technology Mullen supposedly confirmed was entirely fictional. *See* ECF 76-10. The Volt Mobility Purchase Agreement never discloses that Mullen's EVs were not homologated and could not be sold in the UAE. *See* ECF 76-22. Defendants' boilerplate warnings merely address uncertainties applicable to *all* companies in their industry. This failure renders Defendants' cited authority inapplicable. *See In re ECOtality, Inc. Sec. Litig.*, 2014 WL 4634280, at *5 (N.D. Cal. Sept. 16, 2014) (forward looking statement inactionable because, unlike here, the cautionary language identified specific risks, which plaintiffs did not

challenge); *Hampton v. Aqua Metals, Inc.*, 2020 WL 6710096, at *8 (N.D. Cal. Nov. 16, 2020) (similar); *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1112 (9th Cir. 2010) (similar).[4]

Lastly, the safe harbor cannot apply because Defendants had actual knowledge of their falsity. *Infra* at Section III(B)(7); *Forescout*, 63 F.4th at 767; *In re Nuvelo, Inc. Sec. Litig.*, 668 F.Supp.2d 1217, 1230–31 (N.D. Cal. 2009) (safe harbor unavailable because defendants' statements "concealed or downplayed known present risks"); *MannKind*, 835 F.Supp.2d at 817 (collecting cases) (similar).[5]

### 5.    Defendants' Statements Were Not "Puffery"

Defendants' April 20, 2023 press release is not immunized as puffery, DM 13, because it was grounded and concrete: Defendants told investors that EVT's technology increased an EV battery range "from 269 miles to 431 miles", that Mullen's engineers confirmed that the battery technology increased an EV battery range by 75%, and that the technology was "being integrated into final stages of product development[.]"   ¶122. These statements are "capable of objective verification" and therefore cannot be considered puffery. *Or. Pub. Emps. Ret. Fund v. Apollo Grp., Inc.,* 774 F.3d 598, 606 (9th Cir. 2014); *Mullen I*, 2023 WL 8125447, at *8; *Rivian*, 2025 WL 2426714, at *5 (collecting cases); *contra In re Downey Sec. Litig.*, 2009 WL 736802, at *6 (C.D. Cal. Mar. 18, 2009) (referring to a capital position as "strong" and providing vague statements of hope is inactionable puffery).

---

[4] *Par Inv. Partners, L.P. v. Aruba Networks, Inc*. did not deal with the safe harbor, but rather whether the plaintiffs had sufficiently pled falsity, which Plaintiffs have. 681 Fed. App'x 618, 619 (9th Cir. 2017); *supra* at Section III(B)(1)–(3).

[5] Defendants erroneously argue in a footnote that their statements are also immunized by the bespeaks caution doctrine. DM 13. As this Court held in *Mullen I*, the bespeaks caution doctrine is limited in the Ninth Circuit to forward-looking statements with meaningful cautionary language "*in the document*" where the misleading statement was found. 2023 WL 8125447, at *12. As neither of these conditions are met, *supra*, the bespeaks caution doctrine does not apply.

MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS FIRST
AMENDED COMPLAINT

### 6.    All Statements are Attributed to Defendants

Defendants touted Hardge to investors as a partner and joint venturer of Mullen, and made him an officer of Mullen's subsidiary, MAEO. ¶119. Consequently, when making misrepresentations about the Saudi deal the joint venture supposedly landed, Hardge "acted with apparent authority on behalf of [Mullen], which placed him in a position of trust and confidence and controlled the level of oversight of his handling of the business." *In re ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d 471, 473 (9th Cir. 2015); *SEC v. OwnZones Media Network, Inc.*, 2020 WL 13311398, at *4–5 (C.D. Cal. Sept. 17, 2020) (agent had apparent authority when they spoke on behalf of the company and the company had indicated that the agent was a representative of the company). Defendants' reliance on *Janus Cap. Grp., Inc. v. First Deriv. Traders* is misplaced. In *Janus*, the Supreme Court held that the defendant was not the maker of misrepresentations by an independent entity not alleged to have actual or apparent authority. 564 U.S. 135, 142 (2011). Consequently, *Janus* presents the exact opposite factual scenario as here. *Id*.

### 7.    Plaintiffs Plead a Strong Inference of Scienter

Scienter is "a mental state that not only covers intent to deceive, manipulate, or defraud, but also deliberate recklessness." *E. Ohman J v. NVIDIA Corp*., 81 F.4th 918, 937 (9th Cir. 2023); *Schueneman*, 840 F.3d at 705. A "strong inference" "need not be irrefutable … or even the most plausible," and no "smoking-gun" is required. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324–26 (2007). The test is simply whether a reasonable person would "deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id*. at 322–23. Here, Plaintiffs allege overwhelming facts that, viewed holistically, establish a strong inference of scienter:

***Defendants had access to and actual knowledge of the concealed information, as confirmed by confidential witnesses.*** That Defendants had access to, and notice of,

- 13 -

the concealed information "may independently satisfy the PSLRA where they are particular and suggest that defendants had actual access to the disputed information." *S. Ferry LP v. Killinger*, 542 F.3d 776, 785–86 (9th Cir. 2008); *see also Turocy v. El Pollo Loco Holdings, Inc.*, 2017 WL 3328543, at *16–17 (C.D. Cal. Aug. 4, 2017) (scienter pleaded where defendants had access contradictory information); *Shenwick v. Twitter, Inc.*, 282 F.Supp.3d 1115, 1134 (N.D. Cal. 2017) (similar). Specifically, CW1 confirmed that Defendants attended weekly telephonic meetings where Mullen's business operations were discussed. ¶175. Moreover, and most notably, CW1 spoke with New repeatedly in July 2024, where New admitted knowing that Mullen's EVs were not homologated for the UAE, but Michery wanted to announce the Volt Mobility Deal anyway. ¶¶163–64. This alone is sufficient. *See City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*, 527 F.Supp.3d 1151, 1187 (N.D. Cal. 2021) (scienter established by CW reports of defendants receiving contradictory information); *Scheller v. Nutanix, Inc.*, 2020 WL 5500422, at *9 (N.D. Cal. Sept. 11, 2020) (similar).

Defendants also had actual notice of Mullen's plans to effect reverse stock splits before September 2023, as they chose and implemented that scheme, and were personally involved in multiple prior reverse splits. ¶¶201–02; *SEC v. Wey*, 246 F.Supp.3d 894, 916–17 (S.D.N.Y. 2017); *In re Petrobras Sec. Litig.*, 116 F.Supp.3d 368, 382 (S.D.N.Y. 2015).

Finally, as Mullen's most senior executives overseeing its day-to-day operations, Defendants had access to the truth about the Company's plans to effect reverse stock splits, its failure to homologate EVs for the UAE, and that Hardge's battery technology did not exist and was not independently verified by Mullen engineers. ¶¶20–21, 200–05; *Mullen I*, 2023 WL 8125447, at *9 (Mullen's senior management would have access to and be aware of contradictory information, establishing scienter); *Turocy*, 2017 WL 3328543, at *16–17 (similar). Defendants are wrong to characterize this as "general awareness," DM 15–16. Plaintiffs plead facts showing that Defendants had

- 14 -

contemporaneous access to the specific contradictory information concealed, which is classic evidence of scienter.

Nor does Defendants' attempt to challenge the CWs accomplish more than raising factual and credibility issues for trial. DM 16–17. For pleading purposes, Plaintiffs' allegations describing each CW's "job titles, descriptions of duties, responsibilities, and period of employment to sufficiently meet the PSLRA's requirements for confidential witnesses." *Baron v. Hyrecar Inc.*, 2022 WL 17413562, at \*9 (C.D. Cal. Dec. 5, 2022); ¶¶60–61. Moreover, the Ninth Circuit has rejected the requirement that CWs need to witness defendants discussing their scheme to be credited. *Quality Sys.*, 865 F.3d at 1144 (crediting low-level employees who provided fewer details than the CWs here and had no contact with defendants). Thus, the CW's personal accounts establishing the true state of affairs at Mullen must be credited. *See* ¶¶62–67, 75–77, 163–64, 175.

Defendants' cited authority, decided before *Quality Sys.*, is distinguishable. *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.* involved "a single statement by a lone [low-level] witness … who worked for [defendant] for three months" and provided only a vague statement about the business, as opposed to the significant detail provided here. 759 F.3d 1051, 1063 (9th Cir. 2014). Similarly, in *Bao v. Solarcity Corp.*, unlike here, most CWs did not work for defendants during the class period and offered only conclusory statements that tangentially touched upon the subjects of the alleged misrepresentations. 2016 WL 54133, at \*5–6 (N.D. Cal. Jan. 5, 2016). Here, the multiple CWs worked for Mullen during the Class Period and specifically corroborated concealed information. ¶¶60–67, 76–77, 92, 163–64, 175, 180.

**Defendants held themselves out as knowledgeable.** As the Ninth Circuit has repeatedly recognized, claiming knowledge about a topic shows scienter because it establishes that the speaker either had such knowledge, or was deliberately reckless in speaking as if knowledgeable without becoming informed. *See, e.g., NVIDIA Corp.*, 81

- 15 -

F.4th at 939–40, 942; *Forescout*, 63 F.4th at 773; *Quality Sys.*, 865 F.3d at 1145; *Reese v. Malone*, 747 F.3d 557, 571–72, 576–77 (9th Cir. 2014). Here, Defendants consistently held themselves out to investors and analysts as knowledgeable about the misrepresented subjects, including Mullen's plans to effect a reverse stock split (¶¶110, 159), Mullen's partnership with Hardge and EVT promoting fictional battery technology (¶¶123, 134, 136, 141), and the Volt Mobility deal (¶¶167–74, 179, 186), thereby asserting a familiarity with those aspects of Mullen's business. *See also* ¶¶206–10. Even less detailed discussions of a company have been deemed sufficient to plead a defendant's scienter. *See In re Zillow Grp., Inc. Sec. Litig.*, 2019 WL 1755293, at *20 (W.D. Wash. Apr. 19, 2019); *In re Questcor Sec. Litig.,* 2013 WL 5486762, at *19 (C.D. Cal. Oct. 1, 2013). In *Mullen I*, this Court found that Michery's discussion of "groundbreaking battery technology" and large sales orders—both of which were plausibly alleged as false—"strongly implies scienter on Michery's part when he made the statements." 2023 WL 8125447, at *9. The same is true here.

**Core operations.** In *S. Ferry LP*, the Ninth Circuit held that no additional facts are required to be pled if "the nature of the relevant fact is of such prominence that it would be absurd to suggest that management was without knowledge of the matter." 542 F.3d at 786; *see also In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 706 (9th Cir. 2021) (finding scienter because it would be absurd to suggest no one told the CEO about key operations information). In *Mullen I*, this Court held that misrepresentations about core features of Mullen's business, including providing "fabricated statements" about "groundbreaking battery technology," are sufficient to establish scienter. *Mullen I*, 2023 WL 8125447, at *8–9. Here, Defendants' misrepresentations all went to the core of its sole line of claimed business, selling EVs, and its actual operations in selling convertible notes requiring reverse stock splits. ¶¶35–99. Moreover, Mullen's partnership with Hardge/EVT and the Volt Mobility Deal were touted as two of the biggest deals for the Company in 2023 and 2024. ¶¶136, 167–73. Further, the core

- 16 -

operations inference is stronger here because Michery was intimately involved in all aspects of Mullen's business. *See* ¶20; *United Ass'n Nat'l Pension Fund v. Carvana Co.*, 759 F.Supp.3d 926, 977–78 (D. Ariz. Dec. 2024) (defendant's personal involvement in company operations supports scienter through core operations); *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 710 (9th Cir. 2012) (similar).

**SOX certifications.** Michery and New's "Sarbanes-Oxley Act certifications filed with the SEC support their scienter, because those certifications required them to access sufficient reporting information to certify that the information provided did not omit any material facts to make the report not misleading." *Bielousov v. GoPro, Inc.*, 2017 WL 3168522, at *7 (N.D. Cal. July 26, 2017); ¶¶216–17. "For these certifications to have any substance, signatories to the certifications must be held accountable for the statements." *Middlesex Ret. Sys. v. Quest Software Inc.*, 527 F.Supp.2d 1164, 1189–90 (C.D. Cal. 2007). Thus, they bolster Defendants' scienter.[6]

**Insider sales.** During the Class Period, Michery and New sold $4,762,781.27 in stock, often shortly after receiving the stock as a gift or compensation. ¶¶218–26. That is far more than the Company made in revenue during the same period. ¶¶31–33, 54. Combined with other facts, Defendants' suspicious stock sales bolster the inference of scienter. *See In re SeeBeyond Techs. Corp. Sec. Litig.*, 266 F.Supp.2d 1150, 1168–69 (C.D. Cal. 2003) (scienter established where defendant reaped millions from suspiciously timed sales even though defendant sold only 7.6% of holdings); *contra Tripp v. Indymac Fin., Inc.*, 2007 WL 4591930, at *5 (C.D. Cal. Nov. 29, 2007) (holding scienter not established where, unlike here, two defendants made no sales and

---

[6] Defendants argue that "merely signing an SEC filing" does not establish scienter without allegations of actual knowledge. But unlike in Defendants' authority, Plaintiffs here *do not* argue that the SOX certifications alone establish scienter, and *do* allege both actual knowledge and participation in disseminating the misleading statements. *Compare* ¶¶100–205 *with In re Hansen Nat. Corp. Sec. Litig.*, 527 F.Supp.2d 1142, 1151 (C.D. Cal. 2007).

MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS FIRST AMENDED COMPLAINT

a third's sales were larger pre-class period); *Lipton v. Pathogenesis Corp*., 284 F.3d 1027, 1038 (9th Cir. 2002) (scienter not established where defendant sold 1.4% of his stock, unlike here where Michery sold 12% and New sold 95%). Further, New entering into a 10b5-1 trading plan during the Class Period while in possession of material non-public information bolsters his scienter. ¶221; *Freudenberg v. E*Trade Fin. Corp*., 712 F.Supp.2d 171, 200 (S.D.N.Y. 2010) (collecting cases).

**Defendants were motivated to fund their lavish lifestyles.** Though not required, *see Tellabs*, 551 U.S. at 325, Plaintiffs allege that Defendants had a specific motive to conceal the truth from investors – "the desire for personal profit." *SEC v. Blackburn*, 156 F.Supp.3d 778, 791 (E.D. La. 2015); *Carlucci v. Han*, 907 F.Supp.2d 709, 733 (E.D. Va. 2012); ¶¶53–73, 212–13. This is especially the case where Defendants' compensation far outweighed the Company's revenue. ¶¶54–55; *Mulderrig v. Amyris, Inc.*, 492 F.Supp.3d 999, 1029 (N.D. Cal. 2020) (scienter established because defendants profited significantly from misrepresentations).

**No plausible competing inference.** Defendants offer no competing inference that could innocently explain either their concealment of adverse facts from investors or misrepresentation of technology that never existed. Defendants claim, without any authority, that the more plausible explanation for Defendants' actions is that Michery was "motivated by a desire for the company he built to succeed[,]" DM 18, but a motivation to succeed cannot and provides no explanation for misstating the Company's plans or concealing fatal impediments to deals touted to investors.

## 8. Plaintiffs Adequately Allege Loss Causation

The Supreme Court makes clear that alleging loss causation "should not prove burdensome" as a plaintiff need only "provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347 (2005). Likewise, under the liberal notice pleading standard, the element of loss causation is met if a disclosure reveals new facts that

- 18 -

render some aspect of the Defendants' prior statements false or misleading. *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 790 (9th Cir. 2020). A disclosure is deemed corrective even if some information was previously public, if it brings to light new implications of the previously disclosed information that investors were not aware of. *See Gilead*, 536 F.3d at 1058. The Complaint easily meets these tests.

Plaintiffs clearly allege that each corrective disclosure and risk materialization provided the market information that had previously been concealed about the Defendants' misstatements regarding the Volt Mobility Deal and fictional battery technology, (¶¶142, 144, 146, 150, 152, 193), as well as Defendants' plan to effect reverse stock splits before September 6, 2023 (¶¶130, 155), and were promptly followed by declines in Mullen's share price. Consequently, each disclosure is directly tied to a specific event, and not "muddled" as Defendants claim. DM 19. "[T]hese subsequent stock drops after [Mullen's] disclosures of adverse facts [are] adequate to plead loss causation." *Sayce v. Forescout Techs., Inc.*, 2021 WL 1146031, at *7 (N.D. Cal. Mar. 25, 2021).

### C.    Plaintiffs Have Properly Pleaded §20(a) Violations

Because the Complaint sufficiently pleads claims under Section 10(b) of the Exchange Act, Plaintiffs' control person liability claims should also be sustained. *See In re SVB Fin. Grp. Sec. Litig.*, 2025 WL 1676800, at *14 (N.D. Cal. June 13, 2025). Additionally, contrary to Defendants' claims, New's liability is not based solely on his title, DM 22, but rather on his active participation in Defendants' scheme and authorization of misleading statements. ¶¶21, 77, 100, 110, 134, 164, 238–44; *In re Int'l Rectifier Corp. Sec. Litig.*, 2008 WL 4555794, at *22 (C.D. Cal. May 23, 2008) (finding allegations of defendants' "positions as CEO, CFO . . . and their signatures on the alleged misleading SEC filings [to be] sufficient at the motion to dismiss stage."); *Cullen v. Ryvyl Inc.*, 2024 WL 4536471, at *16 (S.D. Cal. Oct. 21, 2024) (similar). That Plaintiffs allege New's involvement in running Mullen's operations, Defendants'

scheme, and the dissemination of misleading statements distinguishes this Action from Defendants' authority. *See Katz v. China Century Dragon Media, Inc.*, 2011 WL 6047093, at *6 (C.D. Cal. Nov. 30, 2011).

### D.    Plaintiffs Have Alleged Scheme Liability

To allege scheme liability under Rule 10b-5(a) and (c), a plaintiff need only plausibly allege that a defendant employed a "device, scheme, or artifice to defraud" or "engage[d] in a[n] act, practice, or course of business" that "operates … as a fraud a deceit" – "provisions [which] capture a wide range of conduct." *Lorenzo v. S.E.C.*, 587 U.S. 71, 79 (2019). "A plaintiff need not plead facts that reveal the scheme's particular mechanisms; rather, allegations the nature, purpose, and effect of the fraudulent conduct and the roles of the defendants are sufficient for alleging participation." *Borteanu v. Nikola Corp.*, 2023 WL 11017679, at *18 (D. Ariz. Dec. 8, 2023).

Defendants mistakenly claim their actions were not manipulative, but "simply part of a normal course of business." DM 20. But "***there is no requirement of illegality in order for acts to qualify as inherently deceptive***." *SEC v. Medallion Fin. Corp.*, 2024 WL 4227753, at *16 (S.D.N.Y. Sept. 18, 2024); *In re Bed Bath & Beyond Corp. Sec. Litig.*, 687 F.Supp.3d 1, 18 (D.D.C. 2023) (rejecting the argument, like Defendants, that scheme liability requires acts like "wash sales, matched orders, or rigged prices," as such an argument "distorts binding precedent"). Instead, "what matters is whether the deceptive conduct and the fraud were part of a string of events that are all intertwined." *SEC v. Patel*, 2025 WL 1994550, at *6 (E.D.N.Y. July 17, 2025) (rejecting that acts "in furtherance" of a scheme must be "more egregious").

Plaintiffs outline numerous *actions* Defendants took in furtherance of their scheme beyond misrepresentations and omissions, all of which are sufficient to establish liability. For example:

- **Stock Manipulation**. Defendants created preferred stock with immense voting

power for Michery to manipulate the shareholder vote authorizing a reverse stock split. ¶¶100–06; *SEC v. Sugarman*, 2020 WL 5819848, at *9 (S.D.N.Y. Sept. 30, 2020) (convincing the company to engage in an action and supervising employees carrying out actions in furtherance of the scheme).

- **Fictional Progress Towards Sales**. Defendants shipped vehicles to the UAE that they knew could not be sold there to mislead investors about the saleability and homologation of Mullen's EVs. ¶183; *Nikola*, 2023 WL 11017679, at *19 (creating a misleading video about a vehicle's sale-readiness).

- **Fictional Technology and Contracts**. Defendants disseminated misleading information they claim was derived from their joint venturer, Hardge. ¶136; *Lorenzo*, 587 U.S. at 78–79 (finding scheme liability for disseminating a false statement made by a third party); *S.E.C. v. Curshen*, 888 F.Supp.2d 1299, 1308 (S.D. Fla. 2012) (issuing press releases that "claimed fictitious achievements"); *Courter v. CytoDyn, Inc.*, 788 F.Supp.3d 1150, 1173 (W.D. Wash. 2025) (disseminating and repeating statements known to be false).

- **Financial Deception**. Defendants manipulated financial reporting and refused to lay off employees to give investors a false impression of the Company's success. ¶¶76–77; *Patel*, 2025 WL 1994550, at *6 (manipulating financial statements to inflate revenue to investors).

- **Effecting Convertible Note Sales.** To raise funds for Defendants' compensation and other expenses, Defendants caused Mullen to sell approximately $250 million of convertible notes and warrants to complicit investors that they knew would compromise Mullen's listing upon conversion and would be inconsistent with statements made to investors and NASDAQ about foregoing reverse splits. ¶¶75–77, 103, 108–13, 115, 118–26, 132–37, 161, 165–75, 179, 183, 185, 189, 195, 197–98; *SEC v. Laura*, 680 F.Supp.3d 204, 233 (E.D.N.Y. June 28, 2023) (finding undisclosed intent was sufficient to establish scheme liability).

That some alleged acts are intertwined with the alleged misrepresentations or omissions does not mean scheme liability is a "mere recast of [the] misrepresentations claims." *In re Galena Biopharma, Inc. Sec. Litig.*, 117 F.Supp.3d 1145, 1194 (D. Or. 2015). Moreover, it is irrelevant that Defendants were required to disclose their reverse stock splits days before execution, DM 20–21. The scheme involves their acts in

- 21 -

creating this concealed risk months ahead of time. ¶¶100–07.[7]

Defendants' cited authority is clearly distinguishable. In *Brady v. Top Ships, Inc.* 2019 WL 3553999, at *8–10 (E.D.N.Y. Aug. 5, 2019) and *Silverberg v. DryShips, Inc.*, 2024 WL 4450793, at *5–6 (E.D.N.Y. Oct. 9, 2024), the schemes at issue revolved *solely* around fully-disclosed reverse stock splits, unlike here where Plaintiff pleads numerous actions taken *in addition* to the reverse stock splits hidden from investors. Moreover, unlike in *Brady* and *Silverberg*, Plaintiff sufficiently alleges misleading statements and omissions in connection with Defendants' scheme. *Id*.; ¶¶75, 108–12; 118–26, 132–37, 165–75, 179, 185. Thus, neither *Brady* nor *Silverberg* provides Defendants any reprieve.[8]

## IV.   CONCLUSION

For the above reasons, Defendants' motion to dismiss should be denied in its entirety. In the alternative, Plaintiffs respectfully request leave to amend. *See Osher v. JNI Corp.*, 183 Fed. App'x. 604, 605 (9th Cir. 2006).

Dated:  November 14, 2025         Respectfully submitted,

**POMERANTZ LLP**

*/s/ Christopher P.T. Tourek*

Joshua B. Silverman (admitted *pro hac vice*)
Christopher P.T. Tourek (admitted *pro hac vice*)
Genc Arifi (admitted *pro hac vice*)

---

[7] Defendants' failure to address most of the scheme allegations waives any future opportunity to do so. *Autotel v. Nev. Bell Tel. Co*., 697 F.3d 846, 852 n.3 (9th Cir. 2012).

[8] Moreover, Plaintiff has sufficiently pled scienter through numerous factors, *supra* at Section III(B)(7), unlike in *ATSI Communications, Inv. v. Shaar Fund, Ltd.*, where the plaintiff attempted to establish scienter solely through defendants' use of convertible preferred stock. 493 F.3d 87, 104 (2d Cir. 2007).

- 22 -

10 South LaSalle Street, Suite 350
Chicago, Illinois 60603
Tel: (312) 377-1181
Fax: (312) 229-8811
jbsilverman@pomlaw.com
ctourek@pomlaw.com
garifi@pomlaw.com

*Counsel for Lead Plaintiff Muhammad Jafri
and Co-Lead Counsel for the Class*

**ROBBINS LLP**
Stephen J. Oddo
5060 Shoreham Place, Suite 300
San Diego, CA 92122
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
Email: soddo@robbinsllp.com

*Counsel for Lead Plaintiff Teeluck Persad
and Co-Lead Counsel for the Class*

**BRONSTEIN, GEWIRTZ
& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Additional Counsel for Muhammad Jafri*

MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS FIRST
AMENDED COMPLAINT

1
2

# CERTIFICATE OF COMPLIANCE

3
4
5
6

    The undersigned, counsel of record for Co-Lead Plaintiffs Muhammad Jafri and Teeluck Persad, certifies that this brief spans 22 pages and contains 6,968 words, which complies with the word and page limits of L.R. 11-61 and Rule 4(c) of the Court's Initial Standing Order.

7
8

                            */s/  Christopher P.T. Tourek*
                            Christopher P.T. Tourek

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- 24 -

MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS FIRST
AMENDED COMPLAINT